UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **1290 CLOTHING CO, LLC**, a Georgia limited liability company, d/b/a Tokyo Valentino, | ) ) ) ) |  |
| Plaintiff / Petitioner, | ) ) ) | CASE NO.: |
| vs. | ) ) ) |  |
| **COBB COUNTY**, **GEORGIA,** a political subdivision of the State of Georgia, and **MIKE BOYCE, KELI GAMBRILL, BOB OTT, JOANN BIRRELL,** and **LISA CUPID,** all in their official capacities as members of the Cobb County Board of Commissioners, | ) ) ) ) ) ) ) ) |  |
| Defendants / Respondents, | ) ) ) |  |
| _____ | / |  |

# COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF; AND SUPPLEMENTAL CLAIM FOR PETITION FOR WRIT OF CERTIORARI

Plaintiff, 1290 CLOTHING CO, LLC, files this Complaint against COBB COUNTY, GEORGIA, pursuant to 42 U.S.C. §1983, seeking a judgment declaring certain Ordinances, policies and practices of the Defendant to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Plaintiff also seeks a Writ of Certiorari directed to MIKE BOYCE, KELI GAMBRILL, BOB OTT, JOANN BIRRELL, and LISA CUPID in their capacity as members of the Board of Commissioners of Cobb County, Georgia, to review their decision to revoke Plaintiff's business license

under this Court's supplemental jurisdiction. Plaintiff seeks a permanent injunction against the enforcement of the subject Ordinances, policies and practices, together with supplemental relief as permitted by law.

## Parties

1.      Plaintiff 1290 CLOTHING CO, LLC ("Tokyo Valentino") is a limited liability company organized under the laws of the State of Georgia in good standing which owns and operates a retail establishment at 1290 Johnson Ferry Road, Marietta, Cobb County Georgia 30068.[1]

2.      Defendant COBB COUNTY ("the County") is a political subdivision of the State of Georgia, and it has the capacity to sue and be sued.

3.      Respondent MIKE BOYCE, is the Commission Chairman, and is a member of the Cobb County Board of Commissioners. Boyce is subject to the jurisdiction of this Court.

4.      Respondent KELI GAMBRILL, is the District 1 Commissioner, and is a member of the Cobb County Board of Commissioners. Gambrill is subject to the jurisdiction of this Court.

5.      Respondent BOB OTT, is the District 2 Commissioner, and is a member of the Cobb County Board of Commissioners. Ott is subject to the jurisdiction of this Court.

---

[1]   While Plaintiff has a Marietta mailing address, it is located in unincorporated Cobb County.

6.      Respondent JOANN BIRRELL, is the District 3 Commissioner, and is a member of the Cobb County Board of Commissioners. Birrell is subject to the jurisdiction of this Court.

7.      Respondent LISA CUPID, is the District 4 Commissioner, and is a member of the Cobb County Board of Commissioners. Cupid is subject to the jurisdiction of this Court.

8.      The individual Respondents who comprise the Cobb County Board of Commissioners will be referred to collectively to as "the Board" or "Board of County Commissioners."

9.      The Cobb County Board of Commissioners ("the Board" or "Board of County Commissioners") is the final decision maker on whether an Occupation Tax Certificate is denied, suspended, or revoked by the County.

## Nature of the Case

10.     Tokyo Valentino operates a retail store that sells a wide variety of goods including clothing, undergarments, shoes, games, cards and devices and products intended for adult consumers. The adult products include smoking accessories as well as sexually oriented materials. The sexually oriented materials include a small quantity of sexually explicit DVDs along with condoms, lubricants and devices which are designed to stimulate human genitalia.

11.     Plaintiff applied for and obtained its business license – referred to as an Occupation Tax Certificate ("OTC") - on or about March 2, 2020.

12.     Plaintiff opened for business on or about June 9, 2020.

13.     On or about October 27, 2020, following a hearing before the Board of County Commissioners of Cobb County, the Board revoked Plaintiff's OTC. Plaintiff asserts that the revocation of its business license violated its speech rights under the First Amendment, its substantive and procedural due process rights under the Fourteenth Amendment, and its right of Equal Protection guaranteed by the Fourteenth Amendment.

14.     With this Complaint, Tokyo Valentino seeks an order (1) declaring that Section 78-45 of the County Code, which governs the revocation of occupation tax certificates is unconstitutional under the First and Fourteenth Amendments; (2) granting injunctive relief against the County from enforcing Section 78-45 of the County Code against Plaintiff and any similarly situated business; (3) declaring that Tokyo Valentino established vested rights as a lawful use under the County's existing ordinances at the time it opened; and (4) seeking judicial review under Georgia substantive law to quash the decision of the Board of County Commissioners to revoke Plaintiff's OTC.

## Venue

15.     All acts or omissions alleged in this Complaint have occurred, or likely will occur, in the Northern District of Georgia and therefore venue is properly within  this district pursuant to 28 U.S.C. § 1391(b)(2).

## Jurisdiction

16.     Jurisdiction for this suit is conferred by 42 U.S.C. §1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

17.     This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

18.     The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

19.     The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

20.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367

21.     Plaintiff asks this Court to review by certiorari the decision of the Respondents, sitting in their capacity as members of the Board of Commissioners of Cobb County, to revoke Plaintiffs' occupation tax certificate. This Court has jurisdiction over that issue pursuant to 28 U.S.C. §1367 as for any supplemental claim. This Court also has such jurisdiction pursuant to the authority of City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S.Ct. 523 (1997). Pursuant to the Erie Doctrine, this Court has the authority to apply Ga. Code Ann., §§ 5-4-1 and 5-4-3 to issue a writ of certiorari to "any inferior judicatory" including County administrative tribunals.

22.     This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

### Regulatory Framework: The Occupation Tax Certificate Ordinance

23.     The County requires all businesses to apply for and obtain an occupation tax certificate. The regulations pertaining to occupation taxes and regulatory fees are found in Part I, Chapter 78, Article II of the Cob County Code and are codified as §§ 78-31 through 78-47 ("the Business Licensing Code"). A copy of the Business Licensing Code is attached as Exhibit "A" to this Complaint.

24.     The specific requirement that businesses obtain an occupation tax certificate is found in §78-31(a):

> … [A]ll persons, including professional corporations, engaged in business in the unincorporated area of the county are hereby required to register their business or office and obtain a business registration certificate therefor, and pay the amount now or hereafter fixed as the occupation tax thereon.

25.     Section 78-46 makes it unlawful to operate a business without the necessary certificate:

> (a)     It shall be unlawful for any person to engage in any business provided for in this chapter without first applying for and obtaining a business registration certificate as required by this chapter…

26.     The occupation license tax implemented by the Business Licensing Code is intended to generate revenue for the County and is not intended as a regulatory measure:

> The occupation tax levied in this section is for revenue purposes only and is not for regulatory purposes.

§78-31(a), Cobb County Code.

27.     The County classifies businesses into "major group classifications" which are established by the "Standard Industrial Classification Manual" which is published by the U.S. Office of Management and Budget. The particular classification of each business is based on "the principal activity or dominant line of such business, i.e., that series of goods or services which produces the largest proportion of the business's gross revenues from all sources." *See*, §78-33, Cobb County Code.

28.     The amount of the occupation tax imposed is based on the prior year's gross receipts or an estimate of a new business' gross receipts. *See*, §78-36(a), Cobb County Code. For that reason, the County requires OTC applicants to disclose their gross receipts and "profitability ratio" to ascertain the appropriate tax:

> Sec. 78-34. - Basis for fees; schedule of fees.
>
> (a)     Every business subject to this chapter shall pay a fee based on gross receipts of the business or practitioner in combination with the profitability ratio for the type of business, profession or occupation as measured by nationwide averages derived from statistics, classifications or other information published by the United States Office of Management and Budget, the United State Internal Revenue Service, or successor agencies of the United States.

29.     In addition to disclosure of estimated gross receipts and identification of the "major group classification," the County requires that an applicant disclose the number of

employees, the SIC classification and "any such other information as may be required by the supervisor of the business license office":

Sec. 78-41. - Forms.

(a)    The application for a business registration certificate, notices, license forms and other documents and papers necessary to the implementation and enforcement of this chapter shall be on such forms and in such manner as may be prepared and directed by the supervisor of the business license office.

(b)    Such forms shall include the SIC (Standard Industrial Classification) of the business, its taxable gross revenues for the preceding 12 calendar months, the number of employees, and any such other information as may be required by the supervisor of the business license office.

30.    Under §78-45 of the Business Licensing Code, the supervisor of the business license office is authorized to suspend or revoke an occupation tax certificate:

(b)    The supervisor of the business license office may suspend a business registration certificate where there is evidence of due cause under subsection (c) of this section for revoking the license.

31.    The grounds for suspending or revoking a license are set forth in §78-45(c):

(c)    A business registration application or certificate under this chapter may be denied, suspended or revoked only if one or more of the following exists:

(1)    The applicant or licensee has failed to obtain any paper or document necessary in pursuance of its business as may be required by any office, agency or department of the county, state or United States under authority of any law, ordinance or resolution of the county, state or United States.

(2)    The applicant or licensee has supplied false information to the supervisor of the business license office.

(3)    The applicant or licensee has violated any ordinance, law, or resolution that regulates such business.

(4)    The applicant or licensee has failed to pay any fee to the county, has failed to make a return or pay a tax due to the tax commissioner of the county, the county business license division, or any other agency of the county government or has otherwise failed to comply with the provisions of this chapter or any other chapter of this Code of Ordinances.

(5)    The applicant or licensee during the 12 months next preceding has engaged in misrepresentation of facts, whether through advertisement or through any form of direct communication, oral or written, which is intended to mislead the public or any party with whom the licensee deals in pursuance of the licensed business. By way of illustration only, and without limiting the scope of this subsection, the term "due cause" as used in this section shall consist of any act or practice designated as unlawful in O.C.G.A. § 10-1-393(b)(1) - (11) or declared by the administrator of the Fair Business Practices Act to be unlawful pursuant to regulations made under O.C.G.A. § 10-1-394, subject to the exemptions contained in O.C.G.A. § 10-1-396.

(6)    Allowing any condition on the licensed premises that endangers public health or safety.

32.    The initial decision of the supervisor of the business license office is subject to review / appeal to the Cobb County Board of Commissioners, which has the authority to confirm or overrule the supervisor's determination:

Sec. 78-45. - Denial, suspension and revocation of license.
…
(b)    … This action shall be reviewed at the next regular meeting of the board of commissioners, or, at the request of the license holder, a special meeting of the board of commissioners may be called within three days after such request is filed with the business license office. If the board of commissioners affirms the decision of the supervisor, then the license shall be permanently revoked. If the decision of the supervisor is reversed, then the license shall be returned to the licensee immediately.

33.    The Cobb County Code of Ordinances specifies that the procedures for the hearing before the Board of County Commissioners are as "specified in section 6-147(b)." *See*, §78-45(a), Cobb County Code.

34.      Section 6-147(b) includes no procedures at all, but reads as follows:

(b)      The police department shall notify the business license division manager of any violation of section 6-147(a).

35.      Section 6-147 governs licensing of alcoholic beverage establishments and does include procedures for revocation hearings pertaining to those licenses or to OTCs.

36.      Tokyo Valentino does not serve alcoholic beverages and does not hold an alcoholic beverage license. Section 6-147 has no application to Plaintiff's business.

37.      The Business License Code makes no other reference to procedures nor did the Board of County Commissioners announce or adopt any other procedures which would apply to the suspension or revocation of OTCs. Rather, the County applies *ad hoc* procedures without any textual support or guidelines in its Code of Ordinances.

38.      The Business License Code does not include any specific provisions for judicial review of license suspensions and revocations. Section 6-147(g)(5)(b) provides for review of decisions of the Board of County Commissioners through a petition for certiorari, but as shown above, the Business License Code does not cite to or incorporate those provisions.

39.      Review of the licensing decisions of the Board of County Commissioners is nonetheless available under the Georgia statutes and common law.

### The Tokyo Valentino Business

40.      Tokyo Valentino is principally a clothing and miscellaneous retail store. Tokyo Valentino stocks and displays an assortment of clothing and accessories, including fishnet stockings, bras, panties, lace teddies, dresses, t-shirts, blindfolds, boxers and shoes.

41.    Tokyo Valentino also stocks and displays an assortment of novelty items, including handcuffs, whips, cologne, perfume, gels, creams, soaps, swings, and candles.

42.    A portion of those novelty items consists of adult products, including dildos, vibrators, and other devices commonly used to stimulate human genitalia.

43.    In addition to displaying and selling the non-media items described above, Tokyo Valentino advertises, stocks and displays sexually explicit media ("the Media"). The Media (including DVDs and magazines) displayed and sold at Tokyo Valentino is non-obscene, constitutionally-protected erotic speech.

44.    Plaintiff maintains that its retail store is not properly characterized as an "adult entertainment establishment," "adult business," "adult bookstore" or "adult video store" under the Cobb County Code of Ordinances. In particular, the stock of sexually explicit media is *de minimis* and does not make up a "substantial" or "significant" portion of the retail goods for sale. Furthermore, at the time Tokyo Valentino applied to do business and opened its store, the Cobb County Code did not define adult entertainment in terms of novelties, "toys" or "sexual devices." Therefore, Tokyo Valentino was not an adult entertainment establishment or adult bookstore at the time it opened its business.

45.    Tokyo Valentino believes that its sexually explicit, but non-obscene DVDs are a form of expressive communication which is beneficial to society in that speech of this nature enhances individuals' conscious ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree.  Tokyo Valentino believes this expression promotes the appreciation of the human body, with an emphasis on the consideration of popular

contemporary concepts of physical attractiveness and the stimulating and entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

46.     Tokyo Valentino further believes that the sexual devices it markets and sells promote intimacy and healthy sexual relationships and dramatically improve the psychological and physical health of its patrons.

47.     Tokyo Valentino's patrons are limited exclusively to consenting adults; persons under 18 years-old are not permitted on the premises and are not permitted to buy any products at the business.

48.     Plaintiff has a clear legal right to disseminate non-obscene, adult Media without fear of retaliatory conduct and selective enforcement by the County. Such communication is protected by the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

49.     As a modest-sized retail store, selling a variety of consumer goods, Tokyo Valentino could properly be described under any of several SIC classifications. The most descriptive SIC codes might include:[2]

5399 Miscellaneous General Merchandise Stores

Establishments primarily engaged in the retail sale of a general line of apparel, dry goods, hardware, housewares or home furnishings, groceries, and other lines in limited amounts. Stores selling commodities covered in the definition for department stores, but normally having less than 50

---

[2]  SIC Codes are published by the United States Department of Labor and are available at https://www.osha.gov/data/sic-search.

employees, and stores usually known as country general stores are included in this industry. Establishments primarily engaged in the retail sale of merchandise by television, catalog and mail-order are classified in Industry 5961.

- ▪ Catalog showrooms, general merchandise: except catalog

- ▪ Country general stores-retail

- ▪ General merchandise stores-retail

- ▪ General stores-retail

- or -

5999 Miscellaneous Retail Stores, Not Elsewhere Classified

Establishments primarily engaged in the retail sale of specialized lines of merchandise, not elsewhere classified, such as artists' supplies; orthopedic and artificial limbs; rubber stamps; pets; religious goods; and monuments and tombstones. This industry also includes establishments primarily engaged in selling a general line of their own or consigned merchandise at retail on an auction basis. Establishments primarily engaged in auctioning tangible personal property of others on a contract or fee basis are classified in Services, Industry 7389. … [Extensive list of examples omitted].

50.   Tokyo Valentino filed its application for an occupation tax certificate on or about March 2, 2020. In light of the Cobb County Code's reference to "major group classification" and SIC classification, and considering the SIC categories published by the U.S. Department of Labor, Plaintiff described its business in the following terms:

Retail – clothing, undergarments, shows, games, cards & other misc.

A copy of Tokyo Valentino's "Application for Corporation or Limited Liability LLC Occupation Tax Certificate" is attached as Exhibit "B" to this Complaint.

51.   The individual who made application on behalf of Tokyo Valentino and who signed the form was Tomika Hugley. At that time, Ms. Hugley was the general manager of the business and was fully authorized to sign and submit the application for

Tokyo Valentino. Ms. Hugley correctly identified herself as "manager" on line 17 of the application.

52.     On March 5, 2020, a clerk from the County's Business License Division sent an e-mail to Ms. Hugley advising that the County would classify the Tokyo Valentino business as "Clothing – Miscellaneous Retail – Category A2." The clerk assessed a fee of $420.00. A copy of the March 2, 2020 e-mail from the Cobb County Business License Division is attached as Exhibit "C" to this Complaint.

53.     The classification assigned by the County's Business License Division was acceptable to the Plaintiff and accurately described one of the principal lines of retail goods to be sold at its store.

54.     Tokyo Valentino paid the necessary tax on or about March 9, 2020 and obtained the physical certificate from the County. A copy of Tokyo Valentino's occupation tax certificate number OCC027788 is attached as Exhibit "D" to this Complaint.

55.     Tokyo Valentino secured all other permits and inspections necessary to do business and opened its doors on or about June 9, 2020.

<u>**New Adult Entertainment Code**</u>

56.     At the time Tokyo Valentino opened for business, Cobb County regulated adult entertainment establishments and sexually oriented businesses under Part I, Chapter 78, Division 8 of its Code of Ordinances (§§78-320 to 78-334) and the County's Zoning Code which confined adult businesses to the General Commercial Zone with a special land use permit or as a special exception. *See*, §134-192 (Summary of Use).

57.     At the time it obtained its license, and at the time it opened for business, Tokyo Valentino did not fall within the definition of an "adult entertainment establishment" because it offered no live entertainment and it did not fall under the definition of "adult bookstore" because its stock of adult Media was below that established by the Ordinance. The sale of sexual devices was not regulated at all by the Ordinance. The relevant definition then in effect read as follows:

> Adult bookstore means an establishment having 25 percent or more of its stock in trade, books, printed material, magazines or other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, or an establishment with a segment or section, comprising 25 percent or more of its total floorspace, devoted to the sale or display of such material, or with 25 percent or more of its net sales consisting of printed material which is distinguished or characterized by its emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas.

*See*, §78-321, "Adult Bookstore," County Code.

58.     Shortly after Tokyo Valentino opened for business, and in direct response to Plaintiff's marketing and sale of sexually expressive Media and sexual devices, the County adopted substantial amendments to its Code of Ordinances entitled "2020 Code Amendments – Official Code of Cobb County Part I. Chapters 6, 78 and 134." A copy of those Code Amendments is attached as Exhibit "E" to this Complaint.

59.     The purpose of those amendments was to create a new adult entertainment code that would expand the County's classification of sexually oriented businesses and, for the first time, to regulate the sale of sexual devices.

60.     While Tokyo Valentino's business format arguably falls under the new definition of adult bookstore found in the amended Ordinance (because it sells a quantity of sexual devices), the amended Ordinance has no retroactive effect and cannot be applied against the Plaintiff.

61.     Plaintiff's business is a lawful non-conforming use with fully vested rights which are not affected by the locational restrictions in the new adult entertainment code. In vernacular terms, Plaintiff's business is a "grandfathered" use.

### Revocation of Tokyo Valentino's OTC

62.     On or about June 10, 2020, counsel for Tokyo Valentino wrote a letter to the County's Community Development Director advising the County that Tokyo Valentino intended to sell a small quantity of adult media together with sexual devices (which were not then regulated by the County's Code). The letter further stated that the adult media would be kept below the 25% threshold set by the County's Code (i.e. below the limit that would otherwise trigger restrictions on adult entertainment establishments) and that, with respect to sexual devices, "[w]e have reviewed the adult entertainment regulations for Cobb County and do not see any restrictions to doing so." A copy of the June 10, 2020 correspondence is attached as Exhibit "F" to this Complaint.

63.     On August 10, 2020, the County's Business License Division Manager, Ellisia Webb, responded to Tokyo Valentino's letter by requesting that Plaintiff provide a list of its inventory along with sales tax reports and sales records. A copy of the August 10, 2020 correspondence is attached as Exhibit "G" to this Complaint.

64.     On August 28, 2020, counsel for Tokyo Valentino voluntarily provided all of the requested information while noting that "the Fourth Amendment to the United States Constitution actually would require the County to seek and receive an Administrative Warrant in order to obtain the information and documents you desire." A copy of the August 28, 2020 correspondence is attached as Exhibit "H" to this Complaint.

65.     On September 8, 2020, Ms. Webb, the County's Business License Division Manager, issued an administrative order suspending Tokyo Valentino's OTC alleging violations of four provisions of the County Code. A copy of the September 8, 2020 suspension order is attached as Exhibit "I" to this Complaint.

66.     The September 8, 2020 suspension order stated that a hearing would be held on September 22, 2020 before the Board of County Commissioners to consider the permanent revocation of the certificate.

67.     Tokyo Valentino filed a motion to continue the hearing based on its need to subpoena witnesses and to secure open records from the Licensing Division needed to support its defense. That motion to continue was granted informally and the hearing was rescheduled for October 27, 2020.

68.     On or about September 10, 2020, Tokyo Valentino sent a lengthy open records request to Ms. Webb, the County's License Division Manager, seeking a variety of records including OTC applications filed by similar businesses, its past treatment of errors or omissions in license applications and information concerning prior suspension and revocation hearings. A copy of the September 10, 2020 open records request is attached as Exhibit "J" to this Complaint.

69.     The information sought in the open records request was crucial for Tokyo Valentino's defense against the revocation proceeding. Plaintiff alleges the following particulars:

A.     The records would show that the tax Plaintiff paid was appropriate for its use, was comparable to the taxes paid by similarly situated businesses and that any inaccuracies, errors or omissions in Plaintiff's license application were immaterial to the licensing process and to the imposition of the appropriate tax (the *only* purpose of the Business Licensing Code).

B.     The open records request was needed to prove several aspects of Plaintiff's anticipated selective enforcement (Equal Protection) defense:

(1)     The records would help identify suitable comparators (i.e. businesses that were similarly situated and which serve as a baseline to demonstrate disparate treatment as to Plaintiff);

(2)     The records would establish that other retail businesses with a varied inventory employed a business description similar to Plaintiff's when applying for their OTC;

(3)     The records would show that inaccuracies, errors or omissions in license applications for other businesses were uniformly treated as immaterial so long as the proper license tax was paid;

(4)     The records would show that inaccuracies, errors or omissions in license applications for other businesses did not result in suspension or revocation proceedings;

(5)     The records would show that the County would notify other businesses of inaccuracies, errors or omissions in their license applications and give them an opportunity to cure or update that information without taking administrative action against the applicant.

(6)     The records would show that the County had never before sought a license suspension or revocation or that such proceedings were vanishingly rare and were directed only to similarly disfavored businesses.

C.     The open records request was needed to prove several aspects of Plaintiff's anticipated retaliation defense premised on hostility to Tokyo Valentino's speech and the consequent violation of Plaintiff's First Amendment rights:

(1)     The records would show that the County has not previously utilized its licensing system to regulate businesses;

(2)     The records would show that the County had never before sought a license suspension or revocation or that such proceedings were vanishingly rare and directed only to similarly disfavored businesses.

(3)     The records would bolster Plaintiff's claim that the revocation of its OTC was pretextual and was pursued to censor Plaintiff's speech rather than to prosecute any actual violation of the County's Ordinances.

(4)     The records would show that the County has never previously utilized its licensing ordinance to punish a business for statements made to the media and third parties regarding the business inventory and purpose.

70.     Tokyo Valentino requested that the County issue witness subpoenas to compel the attendance of witnesses at the October 27, 2020 hearing. In particular, Tokyo Valentino intended to subpoena Tomika Hugley as she had parted ways with the company, was a potentially hostile witness and would not appear voluntarily.

71.     On October 19, 2020, the attorney for the County wrote to counsel for Tokyo Valentino to advise that there were no provisions in the County Code that would authorize an administrative subpoena and that no subpoena forms would be available for that purpose. A copy of the October 19, 2020 correspondence is attached as Exhibit "K" to this Complaint.

72.     The Defendant's failure to accommodate Tokyo Valentino's lawful request for an administrative subpoena strongly prejudiced Tokyo Valentino, was an abuse of discretion, and violated Plaintiff's due process rights.

73.     The open records sought by Tokyo Valentino were in the exclusive possession of the County and Tokyo Valentino had no access to those records but through an open records request. That is particularly true given the County's refusal to issue any administrative subpoenas to compel the attendance of witnesses or the production of documents at the revocation hearing.

74.     Prior to the start of the October 27, 2020 administrative hearing, Tokyo Valentino filed and served its Motion to Continue Administrative Hearing. That Motion was premised on the fact that the County had not produced the records in response to Plaintiff's open records request, that the documents were in the exclusive possession of the County and that the documents were crucial to Plaintiff's defense at the revocation hearing.

A copy of the Motion to Continue Administrative Hearing is attached as Exhibit "L" to this Complaint.

75.    The OTC revocation hearing was conducted by the Board of County Commissioners on October 27, 2020.

76.    The Board of County Commissioners denied Plaintiff's Motion to Continue Administrative Hearing at the commencement of the hearing and proceeded to take evidence, deliberate and issue a ruling.

77.    The revocation hearing was not conducted in accordance with procedures announced in advance, but was conducted on an *ad hoc* basis. As previously alleged, the Business Licensing Code does not include its own procedures and the attempt to import procedures from another part of the Code was not authorized by law and was ineffective. *Compare*, §78-45(a) and §6-147(b).

78.    Tokyo Valentino filed a number of pre-hearing Motions seeking dismissal of the administrative charges based on the County's failure to afford due process, the lack of procedural protections in the Ordinance, the violation of Plaintiff's First Amendment and Equal Protections rights and substantive constitutional challenges to the underlying Business Licensing Code. The motions filed included the following:

A.    Motion to Dismiss Grounds under Section 78-45(c)(5). A copy of the said Motion is attached as Exhibit "M" to this Complaint.

B.    Motion to Declare Section 78-45 "Denial, Suspension and Revocation of License to be Unconstitutional in Violation of Due Processes Clause of both the United

States Constitution, Fourteenth Amendment and the Parallel Provisions of the Georgia Constitution." A copy of the said Motion is attached as Exhibit "N" to this Complaint.

C.     Motion to Dismiss for Violations of First Amendment. A copy of the said Motion is attached as Exhibit "O" to this Complaint.

D.     Motion to Dismiss Grounds under 78-45(c)(2) and Grounds under Section 78-45(c)(4) as they Violate Respondent's Equal Protection. A copy of the said Motion is attached as Exhibit "P" to this Complaint.

79.     All of the claims and defenses asserted in this Complaint and Petition were raised and preserved at the revocation hearing.

80.     The Board of County Commissioners denied all of Tokyo Valentino's Pre-hearing Motions.

81.     At the conclusion of the October 27, 2020 revocation hearing, the Board of County Commissioners voted unanimously to revoke Tokyo Valentino's OTC. That vote was memorialized and the Final Order rendered in the form of official Minutes of the meeting. A copy of the Minutes of the October 27, 2020 revocation hearing is attached as Exhibit "Q" to this Complaint.

82.     Tokyo Valentino followed state law procedures to perfect and sanction review of the Board's administrative order by way of a petition for writ of certiorari. The state law sanction and associated documents are attached as Composite Exhibit "R" to this Complaint.

**Selective Enforcement; Attempt to Censor Plaintiff's Speech and Forfeiture
Plaintiff's Vested Rights**

83.     Tokyo Valentino has vested  rights to operate a business as described in its business license application and in accordance with its format at the time it opened; to-wit: a general retail store selling a variety of goods, including sexual devices and a small quantity or adult Media.

84.     Tokyo Valentino's business success is predicated, in part, on generating the public's interest in the expressive sexually-oriented print and electronic materials - a format successfully and lawfully presented and used in numerous cities and counties throughout the United States.

85.     The arbitrary enforcement of the Business Licensing Code, as a regulatory scheme rather than as a taxing device, is a manufactured and thinly-veiled effort to eliminate a business that purveys erotic media and sells sexual devices in the County. The revocation proceedings are pretextual and the County is acting in bad faith.

86.     The County asserted that Tokyo Valentino lied on its business license application not because of any material falsity and not because Plaintiff paid the incorrect tax, but as a pretext to eliminate Plaintiff's vested rights to operate its business. The County made no showing at the October 27, 2020 hearing that Tokyo Valentino paid an incorrect amount for its occupation tax certificate.

87.     The County intends to make Tokyo Valentino apply for a new OTC so that the County can claim that the store lost its grandfather rights and will have to comply with the new definitions and zoning provisions applicable to adult bookstores. The County

would then deny a new OTC on the claim that Tokyo Valentino was not in the correct zone for adult bookstores based on the new definition.

88.     The suspension and revocation of Tokyo Valentino's OTC is a bad faith and illegal attempt to forfeit and deprive Plaintiff of its vested rights under Georgia law.

89.     If the County is permitted to enforce the business license suspension and revocation, Plaintiff will suffer lost profits, damage to its goodwill, loss of its First Amendment right to disseminate constitutionally protected Media and, in all likelihood, be forced to permanently close.

90.     As a direct result of the County's arbitrary enforcement of its unconstitutional legislation, Plaintiff is being restrained from enjoying the benefits of its contractual relationships, and restrained from providing to the adult public sexual devices and expressive media that is sexually-oriented in nature.

## COLOR OF STATE LAW

91.     As a political subdivision of the State of Georgia, organized and operating under the laws of the State of Georgia, the Defendant COBB COUNTY and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject ordinances, as amended. The enforcement and threatened enforcement of the subject ordinances against Plaintiff is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

92.     The ordinances, actions and policies of Defendant COBB COUNTY have deprived and will continue to deprive Plaintiff of rights guaranteed and protected by the First and Fourteenth Amendments to the United States Constitution.

## NEED FOR INJUNCTIVE RELIEF

93.     Plaintiff is suffering irreparable injury and is threatened with irreparable injury in the future by reason of the subject Ordinance and the Defendant's policies and practices. Plaintiff has no plain, adequate, nor complete remedy to protect its constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

94.     Plaintiff will suffer a continuing violation of its civil rights and liberties as a result of the Defendant's actions should an injunction not issue.

95.     A permanent injunction will preserve Plaintiff's civil rights and avoid the need to compensate Plaintiff with money damages for further violations of its rights.

96.     The harm which would be suffered by the Plaintiff without an injunction - the loss of its constitutional rights - exceeds any conceivable harm the Defendant would suffer if it is prohibited from pursuing actions which clearly violate the most cherished principles of the First Amendment.

97.     A permanent injunction prohibiting Defendant from engaging in such unconstitutional actions in the future would not be contrary to the public interest.

## ATTORNEY'S FEES

98.     Plaintiff's activities are protected by the First Amendment. Plaintiff has a clear legal right to engage in political and commercial speech, including advertising.

99. Plaintiff asserts that its position, set forth in this Complaint, is legally sound and supported by fact and law. The Defendant's ordinances, policies and policies, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff requires, therefore, a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial and *bona fide* justiciable controversy between the parties.

100. Plaintiff has retained CARY S. WIGGINS and WIGGINS LAW GROUP, LLC and as its attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee, which fee Defendants must pay pursuant to 42 U.S.C. §1988.

## COUNT I
### SECTION 78-45(c)(5)
### VIOLATES THE FIRST AMENDMENT
### (CONTENT-BASED; OVERBROAD AND VAGUE)

101. Tokyo Valentino realleges each fact set forth in paragraphs 1 through 19, and 12 through 100 of this Complaint and incorporates them here by reference.

102. This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201 brought against Defendant COBB COUNTY.

103. Plaintiff is uncertain as to its rights and remedies under the First Amendment to the Constitution of the United States as those rights have been infringed by COBB COUNTY's ordinances, policies and practices.

104.    Plaintiff has a First Amendment right to disseminate videos and other media of its own choosing, including media which includes sexually explicit images or text.

105.    Plaintiff and its principle officers have a First Amendment right to speak with members of the public, including journalists, newspapermen, bloggers and other members of the press, about any matter they choose.

106.    Prior to and after opening the store, Plaintiff and its principal officer. Michael Morrison, gave various statements to members of the press concerning the purpose and nature of the Tokyo Valentino business.

107.    All of the statements made by Plaintiffs and its principal officer constituted "pure speech" and were fully protected by the First Amendment.

108.    Plaintiff and its principal officers have a First Amendment "right to lie" to members of the public as falsehoods of all kinds are protected speech except where such statements constitute defamation, fraud, true threats, criminal conspiracy or deceptive speech within the context of a specific commercial transaction. *See, generally*, United States v. Alvarez, 567 U.S. 709, 722, 132 S. Ct. 2537, 2547 (2012) ("The Government has not demonstrated that false statements generally should constitute a new category of unprotected speech on this basis.").

109.    The statements made to the press were not defamatory or fraudulent, did not represent a true threat or involve a false statement in the context of a specific commercial transaction. The statements do not fall into any category of speech which is excluded from the protection of the First Amendment.

110.    The statements made to the press were substantially true, particularly with regard to the inventory and product mix of the store which had not yet been finally determined at the time those statements were made.

111.    The statements made to the press did not involve a particular commercial transaction, were not advertisements for the Tokyo Valentino business, and did not constitute "commercial speech."

112.    The statements made to the press did not involve any licensing issue between Tokyo Valentino and the Defendants. The Defendants did not rely on and had no right to rely on any such public statements in the context of their licensing decisions.

113.    Neither Plaintiff nor its principal officers owed any common law or statutory duty to be truthful in their statements to the press. In any event, all of the statements made to the press were substantially true at the time they were made.

114.    Section 78-45(c)(5) of the Cobb County Code purports to regulate what a licensee can say to members of the public including the press:

Sec. 78-45. - Denial, suspension and revocation of license.

(c)    A business registration application or certificate under this chapter may be denied, suspended or revoked only if one or more of the following exists:
…

(5)    The applicant or licensee during the 12 months next preceding has engaged in misrepresentation of facts, whether through advertisement or through any form of direct communication, oral or written, which is intended to mislead the public or any party with whom the licensee deals in pursuance of the licensed business. By way of illustration only, and without limiting the scope of this subsection, the term "due cause" as used in this section shall consist of any act or practice designated as unlawful in O.C.G.A. § 10-1-393(b)(1) - (11) or declared by the administrator

of the Fair Business Practices Act to be unlawful pursuant to regulations made under O.C.G.A. § 10-1-394, subject to the exemptions contained in O.C.G.A. § 10-1-396.

115. Section 78-45(c)(5) impermissibly regulates on the basis of the content of speech without a compelling government interest and without utilizing the least restrictive means of regulation.

116. Section 78-45(c)(5) is unconstitutionally overbroad because it reaches a vast quantity of protected speech, including false speech which is nonetheless protected by the First Amendment. Plaintiff alleges the following particulars:

A. The Ordinance does not distinguish between false speech which is protected by the First Amendment and the extremely narrow categories of false speech which lie outside of constitutional protections.

B. The Ordinance is not limited to deceptive and unfair trade practices of the kind made unlawful by the "Fair Business Practices Act of 1975." (Ga. Code Ann. §§10-1-390, et seq.). Instead, the Ordinance specifically states that the reference to the Act is "[b]y way of illustration only, and without limiting the scope of this subsection…."

C. The Ordinance is not limited to its arguably legitimate scope of communications involving the Occupation Tax Certificate, but expressly includes "any form of direct communication, oral or written, which is intended to mislead the public."

D. The Ordinance is not limited to material misstatements, but expressly includes any "misrepresentation of facts."

E. The Ordinance does not distinguish between material misrepresentations concerning quality or value and mere puffery which is protected under the First

Amendment and the common law. *See, e.g.*, <u>Villalobos v. Atlanta Motorsports Sales, LLC</u>, 355 Ga. App. 339, 346, 844 S.E.2d 212, 218, n.1 (2020) (addressing cases which found representations that a car was in good condition to be "mere puffery").

F.   The 12-month look-back period for false statements is arbitrary and will allow licensing decisions to be made based on false statements that are not proximate in time to the licensing decision, or were true at the time, but became untrue due to intervening events not attributable to the applicant.

G.   There is no requirement that a false statement during that 12-month period be causally related to any actual harm, that any person actually rely on the false statement or that the false statement be related in any way to the County's licensing and taxing decisions.

H.   Even in the licensing context, the actionable misrepresentation is not limited to statements made to a County official but also includes statements made to "*any party* with whom the licensee deals in pursuance of the licensed business." (emphasis added).

117.   The need to avoid any potential misrepresentation, no matter how slight, deters businesses such as Plaintiff from giving interviews to the press and also chills the First Amendment right of the press to pursue a story and of readers and viewers who rely on the press to provide information concerning matters of local concern.

118.   The overbreadth is so substantial that protected speech of third parties is likely to be chilled by Section 78-45(c)(5).

119.   The County based its decision to revoke Tokyo Valentino's OTC entirely, or in large measure, upon statements made by Plaintiff to members of the news media

regarding matters unrelated to Plaintiff's license application and tax assessment. This fact

is demonstrated in the record in at least three instances:

A.      The September 8, 2020 administrative suspension order specifically relies

on a number of interviews which Plaintiff's principal allegedly gave to the press:

> **Grounds Under Section 78-45(c)(5).** Due cause to suspend and revoke the license also exists under Section 78-45(c)(5) because the "applicant or licensee during the 12 months next preceding has engaged in misrepresentation of facts, whether through advertisement or through any form of direct communication, oral or written, which is intended to mislead the public or any party with whom the licensee deals in pursuance of the licensed business." The organizer and manager of 1290 Clothing Co LLC, Michael Morrison, has engaged in misrepresentation of facts *to mislead the public concerning the licensed business*. (emphasis added).

> 1.      On or before May 25, 2020, Morrison told East Cobb News that he was not opening a new store in East Cobb. Morrison denied being involved with 1290 Clothing Co, but that was misleading. Morrison is the sole organizer of 1290 Clothing Co LLC, signed the Articles of Organization as the LLC's "Manager," and opened a Tokyo Valentino in East Cobb in June 2020.

> 2.      On or before May 26, 2020, Morrison told the Marietta Daily Journal that he had nothing to do with 1290 Clothing and that it was "not even close to possible' that he was listed as an organizer of 1290 Clothing. But in January 2020 Morrison registered 1290 Clothing Co LLC with the Georgia Secretary of State, signing the articles of organization as manager, listing his own address as the address for 1290 Clothing's principal office address, and using the same registered agent as for the Tokyo Valentino stores in Marietta, Gwinnett County, Brookhaven, and Atlanta.

> 3.      Morrison misrepresented to the Marietta Daily Journal that he did not know the location of the store at 1290 Johnson Ferry Road, despite the fact that months earlier he formed an LLC using the exact street number of the location for the name of the company.

> 4.      Morrison later admitted to the Marietta Daily Journal that his company was opening a store at 1290 Johnson Ferry Road, but he described it as an "electric dance music and festival clothing store." The truth was that Morrison opened a Tokyo Valentino store at the location, which sells lotions

and lubricants, sex toys, smoke products, and lingerie not electric dance music or festival clothing.

5.      On or before May 28, 2020, Morrison told the Atlanta Journal Constitution that the store planned for 1290 Johnson Ferry Road "might be a clothing store, it might be a Tokyo store, we just don't know." That statement demonstrates that Morrison's earlier denials and equivocations concerning the store were misrepresentations to mislead the public The statement is also a misrepresentation itself because renovations at the store were already underway and the store opened as a Tokyo Valentino store, selling sexual devices, by June 9, 2020.

*See*, Exhibit "I" at 2-3.

B.      During the evidentiary presentation at the revocation hearing, the County's counsel, Scott Bergthold, argued that the Board should revoke Tokyo Valentino's OTC under §78-45(c)(5) because the "applicant engaged in a misrepresentation of facts which is intended to mislead the public or any party with whom the license (sic) deals in pursuance of the licensed business." *See*, Exhibit "Q" at 34.

C.      The Motion made by Commissioner Ott and unanimously approved by the Board specifically relied on statements Tokyo Valentino made to the press as cause to revoke its OTC:

3.      Licensee, during the previous 12 months, has engaged in misrepresentation of facts which is intended to mislead the public or any party with whom the licensee deals in pursuance of the license business.

*See*, Exhibit "Q" at 36.

120.    Section 78-45(c)(5) is vague on its face and as-applied to Plaintiff's business activities. Plaintiff alleges the following particulars:

A.      Plaintiff is uncertain whether *any* false statement regardless of context or materiality may be the basis for revocation of its license or whether the false statements must be material or directed only to a particular transaction or application.

B.      Plaintiff is uncertain whether *any* false statement about its business may be the basis for revocation of its license or whether the false statement must concern its Occupation Tax Certificate in some respect.

C.      Plaintiff is uncertain as to which members of the public may constitute a "party with whom the licensee deals." Plaintiff does not know whether any false statement made to any person under any circumstances can lead to the loss of its business and business license or whether the penalty is intended to apply only to statements made to licensing personnel at the County.

D.      The vagueness apparent on the face of the Ordinance allows County licensing personnel to apply arbitrary and subjective standards to licensing determinations.

121.    Section 78-45(c)(5) has been unconstitutionally applied against Tokyo Valentino as it was the sole or a substantial basis for the revocation of Plaintiff's OTC and the attendant loss of profits, business good will, and infringement of First Amendment rights.

122.    Section 78-45(c)(5) represents a continuing threat to Plaintiff's First Amendment rights now and in the future. Plaintiff alleges the following particulars:

A.      While the Business License Code does not specify how long a "permanent" revocation of an OTC lasts and the revocation order itself is silent on the matter, licenses must be applied for annually so it is logical to assume that no revocation will last longer

than one year. That conclusion is further bolstered by the observation that the Business License Code is a revenue-generating measure and the County expects the tax to be paid on an annual basis. Accordingly, even if the current revocation is upheld, Plaintiff will necessarily suffer infringement of its rights when it applies for its 2021 OTC and §78-45(c)(5) is once again applied against it.

B.      Plaintiff would prefer to retain its contacts with the press and wishes to have the ability to make further statements to the press concerning its business. However, Plaintiff risks the loss of its OTC and the right to do business should the County deem any such statements to be false in any respect under §78-45(c)(5).

C.      Because there is a 12-month "look-back" provision in §78-45(c)(5), any statements Plaintiff may make now (or in the future) which the County deems untrue can be used as the basis to deny or revoke an occupation tax certificate when Plaintiff reapplies in 2021.

123.    Section 78-45(c)(5) of the Cobb County Code is unconstitutional on its face and as-applied to the Plaintiff.

WHEREFORE Plaintiff prays for the following relief:

A.      That this Court takes jurisdiction over the parties in this cause;

B.      That this Court enter an Order declaring §78-45(c)(5) of the Cobb County Code to be facially unconstitutional and unconstitutional as applied to the Plaintiff in violation of the First and Fourteenth Amendments;

C.      The this Court enter an Order declaring that Tokyo Valentino established vested rights as a lawful retail use under the County's existing ordinances at the time it opened;

B.      That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

D.      That this Court enter an Order permanently enjoining Cobb County, and its various agents and employees, from enforcing §78-45(c)(5) of the Cobb County Code against Plaintiff and any other similarly situated businesses;

E.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT II
### (License Revocation - Violation of First Amendment – Bad Faith / Retaliation)

124.    Tokyo Valentino realleges each fact set forth in paragraphs 1 through 19, and 12 through 100 of this Complaint and incorporates them herein by reference.

125.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201 against Defendant COBB COUNTY.

126.    The purpose of the Cobb County Business Licensing Code is to establish standards and procedures to levy and collect an occupation license tax on businesses.

127.    The Cobb County Business Licensing Code is not intended to act as an independent source of authority to regulate businesses, but is restricted to its sole purpose of generating revenue. *See*, §78-31(a), Cobb County Code.

128.    The County's application process for obtaining an OTC is intended to identify the general nature of a business so that the appropriate tax can be assessed and collected; the application has no other legitimate purpose.

129.    Cobb County Business Licensing Code is not intended to serve as a means of implementing the County's zoning laws or other laws pertaining to adult entertainment establishments or sexually oriented businesses.

130.    The County has no legitimate interest in regulating the content of Plaintiff's speech – particularly with respect to statements made to newspapers and the press concerning matters of public interest.

131.    Plaintiff properly disclosed the nature of its business as a retail store selling a variety of consumer goods when it applied to the County for an OTC.

132.    The description of Plaintiff's store on its application for an OTC was at least as complete and detailed as the descriptions used by other retail stores in the community in their OTC applications.

133.    The Cobb County Business Licensing Code does not require a detailed disclosure of product mix and inventory. Indeed, the "Application for Corporation or

Limited Liability Company LLC Occupation Tax Certificate" used by the County has only a single line, some five inches long, for the entire disclosure. *See*, Exhibit "B."

134.    The tax imposed under the Business License Code is based on revenues and does not depend on product mix or the particular nature of the retail inventory. For purposes of the occupation tax, revenues from the sale of cans of soup are taxed in exactly the same way as revenues from the sale of dildos.

135.    The tax assessed by the County for 2020 based on Plaintiff's application - $420.00 – was correct; the County has never claimed that it would have levied a different amount had Plaintiff disclosed that it sold a small amount of adult Media and sexual devices in addition to clothes, tobacco products and sundries.

136.    Any mistakes or inaccuracies in Plaintiff's application for an OTC were immaterial and caused the County no injury. In particular the County's ability to levy and collect the appropriate tax was not hampered or impeded in any respect on account of any statement made or information withheld by the Plaintiff.

137.    The County suspended Plaintiff's OTC because it objected to the fact that Tokyo Valentino sold adult Media and sexual devices at its retail store and wished to censor Plaintiff's speech.

138.    The County revoked Plaintiff's OTC because it objected to the fact that Tokyo Valentino sold adult Media and sexual devices at its retail store and wished to censor Plaintiff's speech.

139.    Reliance on the Business Licensing Code as a basis for the suspension and revocation of Plaintiff's OTC was entirely pretextual. The County knew or reasonably

should have known that Plaintiff had paid the proper amount of tax. The suspension and subsequent revocation was motivated entirely by an intent to harass Plaintiff, to deny its right of free speech and to prevent it from selling its legal goods.

140.   The County retaliated against Plaintiff not for any legitimate tax or regulatory purpose but because it objected to the nature of Plaintiff's business and, in particular to the dissemination of sexually explicit videos.

141.   The County did not institute the license revocation proceedings out of any concern that Tokyo Valentino had paid the wrong license tax or that the tax could not be collected against that entity, but as part of a campaign to censor Plaintiff's speech and forfeit Plaintiff's vested rights to sell its particular mix of products at its particular location.

142.   The OTC revocation proceedings were intended as a backhanded way of making Tokyo Valentino comply with the County's new adult entertainment regulations, including its locational criteria. Because Tokyo Valentino had acquired vested rights as a grandfathered use, there was no other way that the County could enforce its new adult entertainment regulations against Plaintiff.

143.   If the County is successful in causing the forfeiture of Tokyo Valentino's vested rights, it will be able to prohibit Tokyo Valentino from selling adult Media and sexual devices at its present location.

144.   The suspension and revocation of Tokyo Valentino's OTC is a bad faith and illegal attempt to deprive Plaintiff of its vested rights under Georgia law and to cause the forfeiture of Plaintiff's substantial property rights.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the suspension and revocation orders are unconstitutional as applied to the Plaintiff because they were employed to violate Plaintiff's First Amendment rights.

C.      That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

D.      That the Court enter an injunction enjoining the County from suspending or revoking Plaintiff's OTC in the absence of an Order from a Court directing same;

E.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT III

### Violation of Procedural Due Process – Facial Challenge

145.    Tokyo Valentino realleges each fact set forth in paragraphs 1 through 19, and 12 through 100 of this Complaint and incorporates them herein by reference.

146.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201 brought against Defendant COBB COUNTY.

147.     Plaintiff has a substantive right and property interest under Georgia law to own and operate a business, including a business selling non-obscene adult Media and sexual devices.

148.     Plaintiff has a substantive right and property interest under Georgia law in the licenses and permits issued to it to operate its business.

149.     Under Georgia law and the Fourteenth Amendment to the United States Constitution, Plaintiff's substantive rights and property interests may not be infringed absent procedural due process, including notice and an opportunity to be heard.

150.     Under Georgia law and the Fourteenth Amendment to the United States Constitution, due process requires that a license holder be afforded notice and an opportunity to be heard before a license or permit is suspended or revoked. *See*, <u>Goldrush II v. City of Marietta</u>, 267 Ga. 683, 693, 482 S.E.2d 347, 357 (1997) ("Due process requires that one to whom a license is denied or one whose valid license is being revoked or suspended, be given notice and an opportunity to be heard."); *See, also*, <u>S&S Towing & Recovery, Ltd. v. Charnota</u>, 309 Ga. 117, 119, 844 S.E.2d 730, 733 (2020) ("These principles 'extend to every proceeding[, whether] judicial or administrative or executive in its nature[,] at which a party may be deprived of life, liberty, or property.'").

151.     Under Georgia law and the Fourteenth Amendment to the United States Constitution, due process further requires that provisions for notice and a hearing be incorporated into the licensing scheme. *See*, <u>Goldrush II</u>, 267 Ga. at 693 ("Due process requires that any licensing scheme enacted pursuant to the police power 'provide sufficient

objective criteria to control the discretion of the governing authority and adequate notice to applicants of the criteria for issuance of a license.'").

152.   The Cobb County Business Licensing Code violates Tokyo Valentino's procedural due process rights on its face because it allows for the suspension or revocation of Plaintiff's OTC without providing for the notice and hearing required by the Georgia and U.S. Constitutions.

153.   Section 78-45 of the Cobb County Code provides for the suspension and revocation of occupation tax certificates. However, §78-45 does not include any provisions governing the procedures by which such a proceeding is to be governed.

154.   No other provision of the Cobb County Business Licensing Code includes any direction as to how proceedings to suspend or revoke an occupation tax certificate are to be conducted.

155.   Instead, the Cobb County Business Licensing Code purportedly adopts procedures for a different kind of license hearing (i.e., those for alcoholic beverage licenses) by reference to a separate section of the Code of Ordinances. *Compare*, §78-45(a) and §6-147(b)

156.   Neither §6-147(b) nor §78-45(a) provide for notice to the license holder that its license is subject to suspension or revocation.

157.   Neither §6-147(b) nor §78-45(a) specifies any procedures for how a suspension or revocation hearing is to be conducted.

158.   Neither §6-147(b) nor §78-45(a) nor any other provision of the Cobb County Business Licensing Code specify that a license holder has a right to be heard, to

present evidence, to cross-examine witnesses or to argue against the suspension or revocation of an occupation tax certificate.

159.    The failure to specifically provide for notice or an opportunity to be heard, and the failure to specify any procedures at all, render §78-45 and the Cobb County Business Licensing Code unconstitutional on their face as they violate the Due Process Clause of the Fourteenth Amendment.

160.    The County violated Tokyo Valentino's procedural due process rights when it revoked Plaintiff's OTC on the basis of a facially unconstitutional licensing scheme.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that §78-45 and the Cobb County Business Licensing Code unconstitutional on their face because they fail to provide procedures to guarantee notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

C.    That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

D.    That the Court enter an injunction enjoining the County from suspending or revoking Plaintiff's OTC because the licensing scheme utilized by the County fails to

provide procedures to guarantee notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

E.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IV

### Violation of Procedural Due Process – As-Applied

161.    Plaintiff realleges the facts set forth in Paragraphs 1 through 19, 21 through 100, and 147-159 of this Complaint and incorporates them herein by reference.     161.

This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201 brought against Defendant COBB COUNTY.

162.    Because the County does not have written rules prescribing how its revocation proceedings are to be conducted, the hearing actually conducted on October 27, 2020 was based on unwritten, ad hoc and arbitrary rules 'invented on the fly.'

163.    The lack of established rules governing the proceeding prejudiced the Plaintiff and violated its due process rights in the following respects:

A.      Plaintiff could not adequately prepare its case in advance of the hearing as it did not know whether it could call or cross-examine witnesses or present documentary evidence. Plaintiff did not even know such basics as how much time was to be allotted and whether it could be represented by counsel.

B.      The procedures for calling and examining witnesses was arbitrary. By way of example, the County initially prohibited Plaintiff's counsel from examining Ms. Webb, the Business License Division Manager, before changing its ruling for no principled reason (other than "it decided to").

C.      The standard of proof applied was both arbitrary and uncertain. The County did not announce in advance that any particular burden of proof was applicable and it is impossible to discern from the record whether the burden actually applied was "any evidence"; "preponderance of the evidence"; "clear and convincing evidence" or something else.

D.      The Ordinance does not specify whether a misrepresentation must be material or whether a strict liability standard applied; the hearing was conducted without specifying any standard regarding materiality and the revocation order is silent on the applicable standard.

E.      The County failed to make meaningful findings of fact. Instead, the revocation order simply parroted the language of §78-45 and did not specify any particular misrepresentations that justified the revocation.

164.    In addition to the lack of established procedures, the County abused and denied Plaintiff's due process rights at the hearing in the following respects:

A.      Plaintiff was unable to obtain or compel the production of documents (in the form of OTC applications by other businesses and records of prior administrative hearings involving business licensing decisions). Plaintiff alleges the following particulars:

(1)      As itemized more particularly above, the records sought by Plaintiff were crucial to its defense of the administrative charges;

(2)      The required records were held exclusively by the County;

(3)      Plaintiff attempted to obtain records and testimony by way of an administrative subpoena, but the County advised that no such subpoenas would be available;

(4)      The Plaintiff attempted to obtain the records by way of a timely open records request to the Division Manager, but the County failed and refused to provide the requested records in time for the hearing;

B.      When it became apparent to Plaintiff that the County would not comply with its open record request, Plaintiff filed a Motion for Continuance premised on the County's failure to comply and requesting a 30 day continuance in order to compel their production. The County withheld the requisite records ***and*** denied Plaintiff's Motion for Continuance.

165.      The lack of written procedures to govern the proceedings, the procedures actually employed at the hearing, the refusal to produce documents in response to a timely open records request and the abuse of discretion shown in the County's refusal to continue the hearing, singularly and in combination, violated Plaintiff's due process rights on an as-applied basis.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the particular proceedings by which the County enforced the Cobb County Business Licensing Code violated Plaintiff's procedural due process rights on an as-applied basis.

C.      That the Court declare that the revocation of Plaintiffs' occupation tax certificate was accomplished through arbitrary and standardless proceedings which violated Plaintiff's procedural due process rights under the Fourteenth Amendment on an as-applied basis.

D.      That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

E.      That the Court enter an injunction enjoining the County from suspending or revoking Plaintiff's OTC because the licensing proceedings utilized by the County failed to provide procedures to guarantee notice and an opportunity to be heard and were arbitrary and capricious, in violation of the Due Process Clause of the Fourteenth Amendment.

F.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

G.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT V

## Violation of Substantive Due Process; Ultra Vires Act – As-Applied Challenge

166.    Plaintiff realleges the facts set forth in Paragraphs 1 through 19, 21 through 100, and 147-159 of this Complaint and incorporates them herein by reference.

167.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201 brought against Defendant COBB COUNTY.

168.    Having established standards and procedures for licensing determinations by ordinance, the County is bound to apply those standards and procedures in any determination before it; that is, the County is bound by its own laws.

169.    Cobb County adopted the Business Licensing Code as a revenue-generating measure; that is, it imposes a tax on the right to do business within the County.

170.    The Business Licensing Code specifically provides that it may not be used as a means of regulating businesses:

> The occupation tax levied in this section is for revenue purposes only and *is not for regulatory purposes.*   (emphasis added).

§78-31(a), Cobb County Code.

171.    Having adopted an Ordinance stating that the Business Licensing Code "is not for regulatory purposes," the County may not use the Business Licensing Code to regulate businesses.

172.    The County has reserved the right to suspend or revoke an occupation tax certificate pursuant to §78-45 when a misrepresentation affects the assessment or collection of the occupation license tax.

173.    Pursuant to §78-31(a), the County has foresworn the use of its Business Licensing Code for regulatory purposes. Section 78-45 does not provide any additional regulatory authority to the County. Reading §78-45 *in pari materia* with §78-31(a), suspensions and revocations of OTC may not be conducted "for regulatory purposes."

174.    The County objects to Tokyo Valentino's business because Plaintiff sells adult Media and sexual devices at its retail store.

175.    The County determined that it could not ban the sale of adult Media and sexual devices at the Tokyo Valentino store because its zoning code did not address the sale of sexual devices and Plaintiff's stock and sales of adult Media are *de minimis* and below the threshold for regulation.

176.    Having been thwarted in its effort to regulate and bar Tokyo Valentino's business regulations through lawful regulation, the County turned to unlawful means to shut down Plaintiff's store and censor its speech.

177.    Tokyo Valentino timely applied for its 2020 Occupation Tax Certificate before it began doing business and correctly described its business as a general retail store selling a variety of merchandise: "Retail – clothing, undergarments, shows, games, cards & other misc."

178.    The tax assessed by the County for 2020 based on Plaintiff's application - $420.00 – was correct; the County has never claimed that it would have levied a different amount had Plaintiff disclosed that it sold a small amount of adult Media and sexual devices as part of its retail stock in trade.

179.    Any mistakes or inaccuracies in Plaintiff's application for an OTC were immaterial and caused the County no injury. In particular the County's ability to levy and collect the appropriate tax was not hampered or impeded in any respect on account of any statement made or information withheld by the Plaintiff.

180.    The County claims the right to suspend and revoke Tokyo Valentino's OTC pursuant to §78-45 because the County believes that Plaintiff is operating an adult entertainment establishment or sexually oriented business.

181.    The County does not have the right to suspend and revoke Tokyo Valentino's OTC pursuant to §78-45 for regulatory purposes where Plaintiff has paid the proper amount of license tax.

182.    The County's attempt to suspend and revoke Tokyo Valentino's OTC pursuant to §78-45 is not authorized by its own Code and is an *ultra vires* act.

183.    The County infringed Tokyo Valentino's state law property rights in its business license and violated Plaintiff's substantive due process rights by applying §78-45 in an *ultra vires* manner not authorized by law.

184.    In the alternative, the County infringed Tokyo Valentino's state law property rights in its business license and violated Plaintiff's substantive due process rights by applying §78-45 in an arbitrary and unreasonable manner in contravention to the limitation on authority expressed in §78-31(a).

WHEREFORE, Plaintiff prays for the following relief:

A.     That the Court take jurisdiction over the parties and this cause;

B.     That the Court declare that §78-45 and the Cobb County Business Licensing Code unconstitutional as applied to Plaintiff because the use of the revocation power is expressly limited to matters pertaining to taxes and the County is precluded from using that power for regulatory purposes so that its application in this instance was *ultra vires* and in violation of the Due Process Clause of the Fourteenth Amendment.

C.     That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

D.     That the Court enter an injunction enjoining the County from suspending or revoking Plaintiff's OTC for any regulatory purpose not directly related to the assessment and collected of the occupation license tax as revocation for any other purpose would be ultra vires, in contravention of law and violative of the Due Process Clause of the Fourteenth Amendment.

E.     That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VI
### (Violation of Equal Protection Claims)

185.    Plaintiff realleges each and every allegation in paragraphs 1 through 19 and 21 through 100 of this Complaint and incorporates them herein by reference.

186.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201 brought against Defendant COBB COUNTY.

187.    The County has selectively enforced its Business License Code by singling out Plaintiff for adverse administrative action for the purpose of censoring its First Amendment rights and destroying its substantive investment in a lawful business. The motivations for that selective enforcement are discriminatory and invidious and are not based on a fair and neutral application of the law.

188.    The County objects to Tokyo's Valentino's business because it wishes to censor adult Media of the kind distributed by Plaintiff and wishes to forbid the distribution of sexual devices.

189.    Having discovered that Tokyo Valentino's format was not subject to regulation as an adult bookstore or adult entertainment establishment under its prior Zoning Code and prior Code of Ordinances, the County embarked on a three-part strategy to force Plaintiff out of business:

A.      First the County enacted a new adult entertainment code with modified definitions which would categorize businesses such as Tokyo Valentino as "adult bookstores" for the first time (primarily by adding sexual devices as a line of goods subject to regulation).

B.      Second the County manufactured a claim that Tokyo Valentino's OTC was subject to revocation based on statements that were substantially true when made, did not

affect the tax charged or collected and were, immaterial to any of the interests served by the Business Licensing Code.

C.      Third the County will withhold issuance of a new OTC in 2021 and future years on the claim that Tokyo Valentino lost its grandfather status and is now subject to the new adult entertainment ordinance.

190.    The disparate treatment and selective enforcement is apparent when viewed against the backdrop of the purpose of the Business Licensing Code (to generate revenues for the County in the form of a tax) and the County's administration of that Code over the years and with respect to similarly situated businesses.

191.    Tokyo Valentino submitted an open records request to the County to obtain business licensing records which are in the exclusive possession and control over the County. As alleged above, the County has not produced the requested records.

192.    Despite the stonewalling on the County's part, Tokyo Valentino has obtained documentation from County records which allow it to identify a number of comparable businesses which are similarly situated and which demonstrate the violation of Plaintiff's Equal Protection rights. The list of comparable businesses (subject to supplementation through discovery and forced compliance with the outstanding open records request) includes the following:

- Bath and Body Works – 4475 Roswell Road

- C.A. Merchandising LLC – 4290 Bells Ferry Road

- The Five Below, Inc. – 4101 Roswell Road

- Deisha Danielle Ltd Company – 3566 Tritt Springs Court, Northeast

- BBU Boutique– 5394 Cris Street

- Signature Gifts and Interiors – 4235 Merchant Walk Drive

- Target Corporation – 1401 Johnson Ferry Road

193.    Tokyo Valentino asserts that the listed businesses are comparable to its business and that the OTC applications filed by those businesses are effectively indistinguishable from Plaintiff's. Plaintiff alleges the following particulars:

A.    Like Tokyo Valentino, each of the named businesses operates a retail store which sells a variety or merchandise. Each can be characterized as a "general retail" store.

B.    The actual products sold by each of the named businesses may vary somewhat from the description provided on their respective OTC applications, but in no greater kind or degree than Plaintiff's application.

C.    With the exception of the Target store, the named businesses appear to be similar to Tokyo Valentino and to each other in terms of size (i.e square footage used for retail sales).

D.    Each of the businesses are located relatively close to Tokyo Valentino and to each other and they served a comparable demographic and commercial market.

E.    Each of the businesses applied for and obtained an OTC from Cobb County.

F.    Each of the businesses described their retail format and inventory in general terms like those used by Tokyo Valentino in its OTC application (utilizing such descriptions as "retail store selling merchandise for $500.00 or less" and "retail sales of personal care products").

G.      Each of the businesses was assessed an occupation license tax as a retail use in the same or similar category as Tokyo Valentino.

H.      The occupation license tax assessed against each business, with the possible exception of Target, was similar to the $420.00 assessed against Tokyo Valentino.

194.    As alleged above, the Director of the Cobb County Licensing Division served a written demand on Tokyo Valentino on August 10, 2020 seeking specific information concerning its product mix and inventory. *See*, Exhibit "G."

195.    The Cobb County Licensing Division did not serve a written demand on any of the other identified businesses seeking information concerning their inventory or product mix.

196.    On information and belief, Tokyo Valentino alleges that the Cobb County Licensing Division has never previously sent a written demand to any business other than Tokyo Valentino seeking information concerning their inventory or product mix.

197.    On information and belief, and based on the limited public records the County has released to Plaintiff, Tokyo Valentino alleges that the County has never previously sought to suspend or revoke an OTC for alleged misrepresentations in a license application under §78-45(c)(2) of the Cobb County Code.

198.    On information and belief, and based on the limited public records the County has released to Plaintiff, Tokyo Valentino alleges that the County has never previously sought to suspend or revoke an OTC for alleged misrepresentations to the public under §78-45(c)(5) of the Cobb County Code.

199.    On information and belief, and based on the limited public records the County has released to Plaintiff, Tokyo Valentino alleges that the County has never previously sought to suspend or revoke an OTC based on an alleged variance between the use stated on an OTC application and the "principal activity / dominant line of business" under §78-45(c)(4) of the Cobb County Code.

200.    The revocation of Tokyo Valentino's OTC is not based on any misrepresentation associated with the assessment of the business tax or the collection of same, but is motivated entirely by the County's objection to the dissemination of adult Media and sale of sexual devices by the Plaintiff, its desire to censor speech associated with sexuality and eroticism, and its animosity towards Plaintiff's principal officer.

201.    There is no justification to treat Plaintiff differently from all other businesses that have applied for and obtained OTCs from the County. The difference in treatment between the Plaintiff's business and similarly situated businesses is entirely attributable to the County's content-based objections to Plaintiff's line of goods, in particular its adult Media.

202.    The County has intentionally treated the Plaintiff differently than others similarly situated and there is no rational basis for the difference in treatment.

203.    The County has infringed upon Plaintiff's constitutional rights to speak freely.

204.    This Court should employ heightened scrutiny to conclude that there is no compelling reason to treat Tokyo Valentino differently from all other businesses in the community as Plaintiff's speech rights are affected by the County's ordinances and actions.

205.    The County has treated Plaintiff differently for an invidious purpose and with the specific intent of discriminating against Plaintiff and denying its rights.

WHEREFORE Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties in this cause.

B.    That this Court declare that the County engaged in selective enforcement of its Business Licensing Ordinance against Tokyo Valentino and that the suspension and revocation of Plaintiff's Occupation Tax Certificate violated Plaintiff's Equal Protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

C.    That the Court enter an order declaring that Tokyo Valentino has acquired vested rights to operate a mixed retail store at its present location, including the sale of a small quantity of adult Media and sexual devices; that the County's new adult entertainment code has no retroactive effect; and that the County may not cause the forfeiture of Plaintiffs rights through a pretextual license revocation proceeding.

D.    That this Court issue an Order enjoining the County from enforcing §78-45 of the Cobb County Code against Tokyo Valentino as the selective enforcement of that provision, and the suspension and revocation of Plaintiff's Occupation Tax Certificate under that provision, violated Plaintiff's Equal Protection rights as guaranteed by the Fourteenth Amendment.

E.    That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988; and

F.    That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

# PETITION FOR WRIT OF CERTIORARI

COMES NOW the Petitioner, 1290 CLOTHING CO, LLC, a Georgia limited liability company doing business as Tokyo Valentino, by and through its undersigned attorney, and petitions this Court for a Writ of Certiorari to the BOARD OF COUNTY COMMISSIONERS OF COBB COUNTY, GEORGIA to review the Order of the said Board rendered on or about October 27, 2020, concerning the revocation of Petitioner's Occupation Tax Certificate and says:

## I.    BASIS FOR INVOKING JURISDICTION

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1367, which provides that "in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

2.      This Court further has jurisdiction under City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S.Ct. 523 (1997). Under the Erie Doctrine, this Court has the authority to apply Ga. Code Ann., §§ 5-4-1 and 5-4-3 to issue a writ of certiorari to "any inferior judicatory" including County administrative tribunals. While there is significant textual ambiguity in the County Code of Ordinances, it appears that the County may provide for review of the Board's decision by certiorari under §6-147(g)(5)(b) of the Code. However, certiorari would be available as a matter of law even if the County

Code did not include an express provision allowing such review. *See*, Starnes v. Fulton Cty. Sch. Dist., 233 Ga. App. 182, 185 (1998) (" But the failure to include in the law express language permitting review by writ of certiorari does not negate or dispense with the clear mandate of OCGA §5–4–1(a), which provides that a writ of certiorari *shall* lie for the correction of certain errors by inferior tribunals."); City of Cumming v. Flowers, 300 Ga. 820 (2017) (A quasi-judicial decision of a zoning board may be appealed by certiorari even if the local ordinance does not so provide).

3.       The decision of the Board of County Commissioners to revoke Tokyo Valentino's Occupation Tax Certificate was a quasi-judicial determination made after an evidentiary proceeding. As such, certiorari is the appropriate form of judicial review. *See, generally*, Housing Auth. of City of Augusta v. Gould, 305 Ga. 545, 552 (2019). When an administrative body revokes a business license, certiorari is the only means of reviewing that decision. *See*, Rozier v. Mayor, 310 Ga. App. 178, 179 (2011) ("[A] petition for certiorari with the superior court was Rozier's sole remedy to challenge the City Council's decision to revoke his liquor license…").

4.       Certiorari proceedings are a creature of statute in Georgia. "Certiorari proceedings are considered 'special statutory proceedings' subject to the provisions of the 1966 Civil Practice Act, except to the extent that specific rules of practice and procedure conflict with the Act." Buckler v. DeKalb Cty., 290 Ga. App. 190, 191 (2008). Under Georgia law, it appears that the only jurisdictional requirement for filing a petition for certiorari is obtaining a "sanction" from a Superior Court judge within thirty days of the ruling by the inferior tribunal. *See*, O.C.G.A. § 5-4-6(b) ("The certiorari petition and writ

shall be filed in the clerk's office within a reasonable time after sanction by the superior

court judge…"). Petitioner has obtained the requisite sanction from the Superior Court

Judge. A copy of the sanction is attached as Exhibit "R" to this Petition.

5.     All other requirements for perfecting a writ of certiorari are procedural

matters as the statutes envision that defects in those procedures are subject to cure. *See*,

Wheeler v. Best, __ S.E.2d __, 2020 WL 6041976 at *2 (Ga. Ct. App. Oct. 13,

2020), *reconsideration den.* (Nov. 4, 2020) ("Indeed, certiorari proceedings are amendable

at any stage and a valid bond may by amendment be substituted for a void bond or no bond

at all."). Because Georgia's other procedural requirements for processing certiorari

petitions are just that – procedures, Federal procedures will control over the state law

enactments. *See*, Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d

1245, 1259–60 (11th Cir. 2015) ("Under Erie, 'federal courts are to apply state substantive

law and federal procedural law.' Hanna v. Plumer, 380 U.S. 460, 465, 85 S.Ct. 1136, 1141,

14 L.Ed.2d 8 (1965) …"). Where there is conflict between state and Federal procedures,

Federal procedures will prevail. *See*, Royalty Network, Inc. v. Harris, 756 F.3d 1351,

1359–60 (11th Cir. 2014).

6.     Federal procedures governing certiorari are minimal and Petitioner has

complied with all of them or will comply within the time permitted by the Federal Rules.

The procedures for formatting and filing a petition for writ of certiorari in the Federal courts

are set forth in Rule 21, Fed.R.App.P. That Rule only requires that the applicant "fil[e] a

petition with the circuit clerk with proof of service on the respondents." Rule 21(c),

Fed.R.App.P. The contents of the petition are also delineated and include the name of the

parties, the relief sought, the particular issues being litigated, and the basic facts and argument as to why the writ should issue. *See*, Rule 21(a)(c)(2)(A) and (B), Fed.R.App.P.; *See, also*, Rule 15, Fed.R.App.P. (Comparable procedures for review of agency orders). The Federal procedures do not require the posing of a bond.

7.      The reviewing court has the authority to address and correct any assignments of error which are raised in the proceeding below:[3]

> The writ of certiorari to a superior court shall lie for correction of errors committed by any inferior judicatory, or any person or board exercising judicial powers… The petition must set forth all of the grounds asserted as error but may include only those grounds that were insisted upon at trial or the hearing.

Willis v. Jackson, 148 Ga. App. 432, 433–34 (1978). This Court will not reweigh the facts below, but will determine whether the factual findings were supported by record evidence. In addition, the Court will review all errors of law:

---

[3] Petitioner maintains that each of the Federal claims asserted in Counts I through V above are properly presented to this Court in the first instance as they involve a Federal Question. However, to the extent that such constitutional arguments must be addressed by the Court in its appellate capacity, under supplemental jurisdiction, all of those issues have been preserved. As an administrative tribunal, the Board of County Commissioners lacks the authority to consider any of Petitioner's constitutional claims. *See*, Flint River Mills v. Henry, 234 Ga. 385, 386 (1975) ("We recognized that where the constitutional validity of a statute is challenged before an administrative hearing officer or board, such officer or board is powerless to declare the Act unconstitutional, and resolution of the constitutional question must await judicial review on appeal."). However, constitutional claims are preserved for judicial review when they are raised at the administrative level. *See*, Id; *see, also*, Georgia Real Estate Comm'n v. Burnette, 243 Ga. 516, 516 (1979). Petitioner raised and preserved all of the issues addressed in this Petition through argument of counsel before the Board and by filing written Motions on those points. *See*, Exhibits M, N, O, P to this Complaint. The Board of County Commissioners evaluated each of those Motions at the hearing and each was denied.

> The scope of review of a writ for certiorari to the superior court is "limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence." <u>City of Atlanta Govt. v. Smith</u> affirmed that the substantial evidence standard is the functional equivalent of the "any evidence" standard. On appeal to this Court, our duty is not to review whether any evidence in the record supported the trial court's decision, but whether the record supported the initial decision of the Board.

<u>Forsyth Cty. v. Childers</u>, 240 Ga. App. 819, 820 (1999); *See, also*, <u>DeKalb Cty. v. Bull</u>, 295 Ga. App. 551, 552–53 (2009).

## II.    **STATEMENT OF THE FACTS**

8.      Petitioner realleges the allegations contained in Paragraphs 1 through 93 as if fully rewritten herein and further incorporates all Exhibits attached to this Complaint, which, with the hearing transcript, are part of the record on appeal.[4]  The salient facts set forth in the Complaint may be summarized as follows:

9.      Petitioner 1290 CLOTHING CO, LLC ("Tokyo Valentino") owns and operates a retail establishment at 1290 Johnson Ferry Road, Marietta, Cobb County, Georgia 30068. The Tokyo Valentino business is a general retail store which principally

---

[4] Under Georgia law, the parties do not prepare the record on appeal in a certiorari proceeding. Instead, the clerk of the lower tribunal must "certify and send up all the proceedings in the case to the superior court" O.C.G.A. § 5-4-3; *See, also*, <u>Ultra Grp. of Companies, Inc. v. Inam Int'l, Inc</u>., 354 Ga. App. 304, 305–06, 840 S.E.2d 708, 709–10 (2020) This Court does not have the authority to direct the Clerk of the Board of County Commissioners to assemble the record.  However, that does not present an obstacle to Petitioner's certiorari action because the <u>Erie</u> Doctrine specifies that Federal procedural rules will control. The Federal Rules of Appellate Procedure contemplate that the parties can assemble or supplement the record when the agency clerk fails to furnish a complete record. *See*, Rules 16 and 17, <u>Fed.R.App.P.</u>; *See, also*, <u>Nat'l Ass'n of State Util. Consumer Advocates v. F.C.C.</u>, 457 F.3d 1238, 1248 (11th Cir. 2006) ("We have discretion to correct the administrative record to 'supply any omission from the record or correct a misstatement.' Fed. R.App. P. 16(b).").

sells apparel, accessories and miscellaneous consumer goods. In addition to those products, Tokyo Valentino stocks and displays an assortment of novelty items, including handcuffs, whips, cologne, perfume, gels, creams, soaps, swings, and candles. A portion of those novelty items consists of adult products, including dildos, vibrators, and other devices commonly used to stimulate human genitalia. In addition to displaying and selling the non-media items described above, Tokyo Valentino advertises, stocks and displays sexually explicit media ("the Media").  The Media (including DVDs and magazines) displayed and sold at Tokyo Valentino is non-obscene, constitutionally-protected erotic speech.

9.     Defendant MIKE BOYCE, KELI GAMBRILL, BOB OTT, JOANN BIRRELL, and LISA CUPID are the members of the Board of County Commissioners of Cobb County. The Board is the administrative entity responsible for reviewing licensing decisions of the Business License Division of the Cobb County Community Development Agency, including decisions to deny, suspend or revoke Occupation Tax Certificates. The Board rendered the decision subject to this Petition.

10.     The County requires all businesses to apply for and obtain an occupation tax certificate. The regulations pertaining to occupation taxes and regulatory fees are found in Part I, Chapter 78, Article II of the Cob County Code and are codified as §§78-31 through 78-47 ("the Business Licensing Code"). A copy of the Business Licensing Code is attached as Exhibit "A" to this Petition.

11.     The specific requirement that businesses obtain an occupation tax certificate is found in §78-31(a):

… [A]ll persons, including professional corporations, engaged in business in the unincorporated area of the county are hereby required to register their business or office and obtain a business registration certificate therefor, and pay the amount now or hereafter fixed as the occupation tax thereon.

12.     The occupation license tax implemented by the Business Licensing Code is intended to generate revenue for the County and is ***not*** intended as a regulatory measure:

The occupation tax levied in this section is for revenue purposes only and is not for regulatory purposes.

§78-31(a), Cobb County Code.

13.     The amount of the occupation license tax assessed against a business is not based on the products sold or the mix of products in a general retail store such as Petitioner's. Instead, the tax is calculated based on gross receipts:

Sec. 78-34. - Basis for fees; schedule of fees.

(a)     Every business subject to this chapter shall pay a fee based on gross receipts of the business or practitioner in combination with the profitability ratio for the type of business, profession or occupation as measured by nationwide averages derived from statistics, classifications or other information published by the United States Office of Management and Budget, the United State Internal Revenue Service, or successor agencies of the United States.

14.     Petitioner submitted its application for an occupation tax certificate on or about March 2, 2020. Plaintiff described its general retail business in the following terms:

Retail – clothing, undergarments, shows, games, cards & other misc.

*See*, Exhibit "B" to this Complaint.

15.     Petitioner did not specifically list adult Media or sexual devices in its application for four reasons:

A.      Disclosure of specific inventory and product was not required by the Cobb County Business Licensing Code or on the application itself.

B.      Petitioner's product mix was irrelevant to the determination of the tax to be levied which is based only on gross receipts of the business.

C.      The adult Media and the sale of sexual devices are not the principal activity / dominant line of products sold. Rather, Tokyo Valentino was and remains a general retail store primarily selling clothing and accessories

D.      Petitioner was not an adult business or sexually oriented business under the Ordinance then in effect.

16.     At the time it obtained its license, and at the time it opened for business, Tokyo Valentino did not fall within the definition of an "adult entertainment establishment" because it offered no live entertainment, it did not fall under the definition of "adult bookstore" because its stock of adult Media was below the threshold established by the Ordinance, and the sale of sexual devices was not regulated at all by the Ordinance. The relevant definition then in effect read as follows:

> Adult bookstore means an establishment having 25 percent or more of its stock in trade, books, printed material, magazines or other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, or an establishment with a segment or section, comprising 25 percent or more of its total floorspace, devoted to the sale or display of such material, or with 25 percent or more of its net sales consisting of printed material which is distinguished or characterized by its emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas.

*See*, §78-321, "adult bookstore," County Code.

17.     The License Director assessed the correct tax against Petitioner for 2020 based on Petitioner's application: $420.00.

18.     Tokyo Valentino paid the necessary tax on or about March 9, 2020 and obtained the physical certificate from the County. *See*, Exhibit "D" to this Complaint.

19.     On September 8, 2020, Ms. Webb, the County's Business License Division Manager, issued an administrative order suspending Tokyo Valentino's OTC alleging violations of four provisions of the County Code. A copy of the September 8, 2020 suspension order is attached as Exhibit "I" to this Complaint.

20.     The grounds for suspending or revoking a license are set forth in §78-45(c):

(c)     A business registration application or certificate under this chapter may be denied, suspended or revoked only if one or more of the following exists:

   (1)     The applicant or licensee has failed to obtain any paper or document necessary in pursuance of its business as may be required by any office, agency or department of the county, state or United States under authority of any law, ordinance or resolution of the county, state or United States.

   (2)     The applicant or licensee has supplied false information to the supervisor of the business license office.

   (3)     The applicant or licensee has violated any ordinance, law, or resolution that regulates such business.

   (4)     The applicant or licensee has failed to pay any fee to the county, has failed to make a return or pay a tax due to the tax commissioner of the county, the county business license division, or any other agency of the county government or has otherwise failed to comply with the provisions of this chapter or any other chapter of this Code of Ordinances.

   (5)     The applicant or licensee during the 12 months next preceding has engaged in misrepresentation of facts, whether through advertisement or through any form of direct communication, oral or written, which is

intended to mislead the public or any party with whom the licensee deals in pursuance of the licensed business. By way of illustration only, and without limiting the scope of this subsection, the term "due cause" as used in this section shall consist of any act or practice designated as unlawful in O.C.G.A. § 10-1-393(b)(1) - (11) or declared by the administrator of the Fair Business Practices Act to be unlawful pursuant to regulations made under O.C.G.A. § 10-1-394, subject to the exemptions contained in O.C.G.A. § 10-1-396.

(6)     Allowing any condition on the licensed premises that endangers public health or safety.

21.     The initial decision of the supervisor of the business license office is subject to review / appeal to the Cobb County Board of Commissioners, which has the authority to confirm or overrule the supervisor's determination:

Sec. 78-45. - Denial, suspension and revocation of license.
…
(b)     … This action shall be reviewed at the next regular meeting of the board of commissioners, or, at the request of the license holder, a special meeting of the board of commissioners may be called within three days after such request is filed with the business license office. If the board of commissioners affirms the decision of the supervisor, then the license shall be permanently revoked. If the decision of the supervisor is reversed, then the license shall be returned to the licensee immediately.

22.     The Cobb County Code of Ordinances specifies that the procedures for the revocation hearing before the Board of County Commissioners are as "specified in section 6-147(b)." *See*, §78-45(a), Cobb County Code. However, §6-147(b) includes no procedures at all, but reads as follows:

(b)     The police department shall notify the business license division manager of any violation of section 6-147(a).

23.     On or about September 10, 2020, Tokyo Valentino sent a lengthy open records request to Ms. Webb, the County's License Division Manager, seeking a variety of

records including OTC applications filed by similar businesses, its past treatment of errors or omissions in license applications and information concerning prior suspension and revocation hearings. *See*, Exhibit "J" to this Complaint.

24.     The open records sought by Tokyo Valentino were in the exclusive possession of the County and Tokyo Valentino had no access to those records but through an open records request.

25.     The OTC revocation hearing was conducted by the Board of County Commissioners on October 27, 2020. *See, generally*, Minutes, Exhibit "Q" to this Petition.

26.     At the commencement of the proceeding, Petitioner's counsel filed and argued a Motion for Continuance based on the County's failure to respond to the open records request and the fact that the documents sought were crucial to Petitioner's defense. *See*, Exhibit L.

27.     Respondent denied the Motion for Continuance. *See*, Exhibit "Q" at 33.

28.     The County's evidence at the hearing consisted of:

A.     Evidence that Tokyo Valentino sold sexual devices.

B.     Evidence of a corporate dispute between Tokyo Valentino and its former manager resulting in her disassociation from the business;

C.     Statements made to the press concerning Petitioner's business plans for the Tokyo Valentino store.

29.     The County never argued that it would have levied a different amount had Plaintiff disclosed that it sold a small amount of adult Media and sexual devices in addition to clothes, accessories and sundries. *See, generally*, Minutes, Exhibit "Q."

30.     No evidence or testimony was introduced at any time which would show that the County assessed the wrong tax based on any representation or misrepresentation of the Petitioner, either to County officials or to the public at large.

31.     At the conclusion of the evidentiary hearing, the Board voted unanimously to revoke Petitioner's Occupation tax certificate on the following grounds:

> …Occupation Tax Certificate OCC027788 is permanently revoked, for due cause having been shown that:
>
> 1.     Licensee has supplied false information to the supervisor of the business license office. Section 78-45(c)(2);
>
> 2.     Licensee has failed to comply with the provisions of chapter 78 by failing to have a valid Occupation Tax Certificate for the principal activity/ dominant line of business the business. Section 78-45(c)(4);
>
> 3.     Licensee, during the previous 12 months, has engaged in misrepresentation of facts which is intended to mislead the public or any party with whom the licensee deals in pursuance of the licensed business. Section 78-45(c)(5).

*See*, Minutes, Exhibit "Q" at 36.

32.     This Petition for Certiorari is timely filed.

## III.     <u>**ASSIGNMENT OF ERROR**</u>

33.     Petitioner tenders the following assignment of errors:

A.     The Board violated Petitioner's due process rights and abused its discretion when it refused to grant a continuance based on Tokyo Valentino's inability to obtain documents in the County's sole possession which were necessary to its defense and subject to a timely open records request.

B.      The Board violated Petitioner's due process rights by conducting a hearing on an ad hoc basis in the absence of any ordinance specifying procedures or fixing a standard of review.

C.      The Board misapplied the Business Licensing Code by utilizing it for regulatory purposes rather than for revenue-generating purposes as the text of the law requires.

D.      The Board erred in revoking Tokyo Valentino's OTC in the absence of any evidence tending to show that the Licensing Division assessed the wrong tax or was thwarted in its ability to collect the business tax on account of any statement, misrepresentation, action or omission of the Petitioner.

## IV.      <u>RELIEF SOUGHT</u>

34.      The Petitioner request the Court to grant this Petition for Writ of Certiorari and quash the decision of the Respondents, in their capacity as member of the Board of County Commissioners of Cobb County, to revoke Petitioner's occupation tax certificate because that Order departed from the essential requirements of the law, denied Petitioner due process and the findings were not supported by substantial competent evidence.

## V.      <u>SCOPE OF REVIEW</u>.

35.      Almost all Petitioner's assignments of error involve legal issues which will be considered by this Court *de novo*. Only a single factual issue is presented – whether the County introduced any evidence to show that Tokyo Valentino made any misrepresentation

that would have led to a different tax assessment. That factual issue is evaluated under a more deferential standard:

> "Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine [de novo] the soundness of the conclusions of law that are based upon the findings of fact." Pruitt Corp. v. Ga. Dept. of Cmty. Health, 284 Ga. 158, 160, 664 S.E.2d 223 (2008) (citation omitted). We are therefore "authorized to reverse or modify the agency decision upon a determination that the agency's application of the law to the facts is erroneous." Id. at 161, 664 S.E.2d 223. *See also, e.g.*, Sawnee Elec. Membership Corp. v. Ga. Pub. Svc. Comm., 273 Ga. 702, 706, 544 S.E.2d 158 (2001) ("[W]e are authorized to make an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent.").

Premier Health Care Investments, LLC v. UHS of Anchor, L.P., __ S.E. 2d __, S19G1491, 2020 WL 5883325 at *5 (Ga. Oct. 5, 2020); *See, also*, Clayton Cty. v. New Image Towing & Recovery, Inc., 351 Ga. App. 340 (2019) ("Because 'the substantial-evidence standard is effectively the same as the any-evidence standard,' courts apply the any-evidence standard when reviewing issues of fact. … But when reviewing a question of law, such as the interpretation of a zoning ordinance, the scope of review is de novo."); Bd. of Zoning Adjustment of Atlanta v. Fulton Fed. Sav. & Loan Ass'n, 177 Ga. App. 219, 221 (1985) (Court evaluates the decision of an administrative tribunal to determine "[w]hether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights." (citation omitted)).

## VI.    **ARGUMENT.**

36.     Tokyo Valentino has a protectable property interest in its Occupation Tax

Certificate which is recognized under Georgia law:

> [T[he "right/privilege" dichotomy is no longer availing since "relevant
> constitutional restraints limit state power to terminate an entitlement
> whether the entitlement is denominated a 'right' or a 'privilege.'" Bell v.
> Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). *See
> also* City of Atlanta v. Hill, 238 Ga. 413, 414, 233 S.E.2d 193 (1977), where
> this court noted that "the death knell has been sounded to the right-privilege
> distinction."
> …
> A license which entitles the holder to operate a business and the continued
> possession of which "may become essential in the pursuit of a livelihood"
> is a protectable property interest under the Due Process Clause. Bell v.
> Burson, *supra*, 402 U.S. at 539, 91 S.Ct. at 1589. A law which provides that
> a license can be suspended or revoked only upon proof of certain
> contingencies "has engendered a clear expectation of continued enjoyment
> of [the] license absent proof of culpable conduct" and has thereby given the
> license holder a "legitimate 'claim of entitlement.' [Cit.]" Barry v.
> Barchi, 443 U.S. 55, 65, n. 11, 99 S.Ct. 2642, 2649, n. 11, 61 L.Ed.2d 365
> (1979). [Further citation omitted]… Marietta's ordinance contains a list of
> grounds for the denial of an application for a liquor license (Marietta City
> Code §8–8–2–130) and provides that a granted license is subject to
> revocation or suspension only upon the occurrence of specified events:
> conviction of a violation of the city code's liquor licensing provisions or
> any state or federal law, or revocation by the State of the license it issued
> for the manufacture or sale of alcoholic beverages. Marietta City Code §8–
> 8–2–220(B) and (C). Since Marietta's city code sets forth the criteria which,
> if met, results in the issuance of a license, and specifies that a liquor license
> issued by the city can be suspended or revoked only upon a showing of
> cause, the city code created a protectable property interest in the license.
> Barry v. Barchi, *supra*, 443 U.S. at 64, 99 S.Ct. at 2649; Richardson v. Town
> of Eastover, 922 F.2d 1152, 1156 (4th Cir.1991). *See also* Harris v.
> Entertainment Systems, *supra*, 259 Ga. at 704, 386 S.E.2d 140, where this
> court, while expressly declining to determine the nature of the licensee's
> property interest, concluded that the licensee had a sufficient property
> interest in the license to permit a court of equity to enjoin a criminal
> prosecution

Goldrush II v. City of Marietta, 267 Ga. 683, 695–96 (1997); *See, also,* Georgia Prof'l

Standards Comm'n v. Lee, 333 Ga. App. 60, 64–65 (2015) *quoting* Gee v. Professional

Practices Comm., 268 Ga. 491, 493(1) (1997) ("[O]nce the State issues a professional license, such as the teaching license at issue in this case, its continued possession may become essential in the pursuit of a livelihood. …. In such cases, the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). Accordingly, the Board could not revoke Tokyo Valentino's OTC without affording it due process under both the U.S. Constitution and Georgia law.

### A.   THE BOARD OF COUNTY COMMISSIONERS VIOLATED PETITIONER'S PROCEDURAL DUE PROCESS RIGHTS.

#### (1)   The Board Abused its Discretion by Failing to Grant Petitioner a Continuance to Obtain Documents in the County's Possession.

37.    It is hornbook law that "applications for continuances are addressed to the sound legal discretion of the court" and that "grant or denial of a continuance will not be disturbed absent a showing of an abuse of discretion." Halthon-Howard v. State, 234 Ga. App. 229, 229 (1998). And while the Board of County Commissioners enjoy the same latitude as a court in determining whether to grant a continuance, its discretion is not without limits.

38.    Petitioner sought specific licensing records and records of administrative proceedings related to the County's Business Licensing Code. Those records are maintained by the County in databases that are not immediately accessible to the general public. Instead, members of the public, including Tokyo Valentino, have to submit an open records request to the County to obtain those records in the County's possession. Under Georgia law those records are supposed to be made available upon request "without delay."

*See*, O.C.G.A. §50-18-70 ("The General Assembly further finds and declares that there is a strong presumption that public records should be made available for public inspection without delay.").

39.     Petitioner filed a timely open records request with the County, many weeks before the license revocation hearing. Not coincidentally, the person in charge of those records is the County's Business License Division Manager, Ellisia Webb – the same individual who decided to suspend Tokyo Valentino's OTC. The County provided a smattering of requested documents but advised that the bulk of them (involving over $3,000.00 worth of research costs) were not immediately available. *See*, Letter of September 17, 2020, attached as Exhibit "S" to this Petition. The County made no further effort to comply with Petitioner's open records request in contravention to Georgia law. *See*, O.C.G.A. §50-18-70.

40.     When it became clear that the County would not produce those records prior to the revocation hearing, Tokyo Valentino filed a written Motion for Continuance. Tokyo Valentino recounted its efforts to obtain those documents and expressly asserted that they were necessary to its defense. *See*, Exhibit "L." Petitioner requested a continuance of 30 days in order to give the County additional time to comply with the records request or, barring compliance, sufficient time for Petitioner to compel compliance through the courts. *See*, Id.; *See, generally*, O.C.G.A. § 50-18-73 (Providing a private cause of action to force government to produce public records). The Board denied the Motion for Continuance. *See*, Exhibit "Q" at 33.

41.     The Board abused its discretion when it denied Petitioner's Motion for Continuance. As shown above, those records were necessary to support Tokyo Valentino's constitutional defenses based on Equal Protection and violation of the First Amendment as well as the claim that the Board exceeded its lawful authority by using the Business Licensing Code for regulatory purposes (which was at variance with both the text of the law and with long-established practices which would have been demonstrated by the records at issue). Recent cases involving similar facts have resulted in repeated findings that continuances are mandated in such circumstances and that the failure to grant the continuance represents an abuse of discretion.

42.     The Georgia Court of Appeals recently reversed a conviction because the trial court failed to grant a continuance in the face of a discovery violation by the State. In Williams v. State, 356 Ga. App. 19 (June 29, 2020), the prosecutor failed to disclose the fact that a witness would offer opinion testimony as a "gang expert." The defense counsel immediately moved for a continuance to retain its own gang expert. The continuance was denied and a motion for new trial based on the failure to grant a continuance was also denied. The appellate court found that the defendant had appropriately raised the State's discovery violation as grounds for continuance and that the trial court abused its discretion in failing to grant that reasonable relief:

> This exchange reflects that Williams's motion for a continuance was premised on the State's failure to comply with the Criminal Discovery Act and was understood as such by the trial court and the State. Accordingly, the trial court erred in concluding that Williams's waived this claim of error. Cf. Spencer, 296 Ga. App. at 831 (1), 676 S.E.2d 274 (a defendant waives an objection to a violation of the Criminal Discovery Act where he fails to

request any of the relief available under OCGA §17-16-6, including a continuance).

…

[G]iven defense counsel's accurate description of the testimony she contemplated a gang expert would provide on behalf of her client, we find the trial court abused its discretion in denying Williams's motion for a continuance. *See* Livingston v. State, 266 Ga.501, 503 (1), 467 S.E.2d 886 (1996) (given the State's failure to comply with the reciprocal provisions of the Criminal Discovery Act, the trial court abused its discretion in denying defendant's motion for a continuance). *See also* Rhodes v. State, 200 Ga. App. 193, 194 (1), 407 S.E.2d 442 (1991) ("In the exercise of discretion, the trial judge has to consider the facts and circumstances of each case to determine what the ends of justice require ....") (citation and punctuation omitted).

Id. at 29–31.

43.     Livingston v. State, 266 Ga. 501 (1996), is one of the cases relied on by

Williams v. State. In Livingston, the defendant's attorney served some discovery requests

on the State for witness information and other data in the sole possession of the prosecution.

The prosecutor believed that the State was not obligated to respond to the discovery

requests under applicable law. However, the law had changed in the interim. Defense

counsel moved for a continuance which was denied. The failure to grant a continuance was

held to be legal error:

This is a case in which "something more" has been shown. Defense counsel followed the dictates of the statute and the prosecutor failed to do so, relying on prior law and denying that the new statute changed his obligation to make discovery. The trial court, though it did not explain the basis for denying the continuance, apparently accepted the prosecutor's too-limited interpretation of the statute and forced Livingston to trial six days after indictment without the discovery to which he was entitled. The effect of that ruling was that counsel did not have a meaningful opportunity to examine the evidence against Livingston.

While the appellate courts have a duty to ensure that defendants are not brought to trial with such haste that the defense is prejudiced, we also have

a duty to prevent defendants from delaying proceedings by frivolous motions and requests. "For this reason, [appellate courts] will find the denial of requests for continuance in situations such as this to be error only with great reluctance." <u>Williams v. State</u>, 144 Ga.App. 410(1), 241 S.E.2d 261 (1977). We must reluctantly conclude, as did the Court of Appeals in <u>Williams</u>, that this is a case in which the denial of the motion for continuance was an abuse of discretion requiring reversal. Under the particular circumstances of this case - the short time between indictment and trial and the prosecutor's failure to comply with the new discovery statute, based on a misunderstanding of its requirements - the trial court's denial of the continuance was an error which entitles Livingston to a new trial.

<u>Id.</u> at 502–03.

44.     <u>Georgia Prof'l Standards Comm'n v. Lee</u>, 333 Ga. App. 60 (2015), presents

a similar lesson and similar result in the context of an administrative proceeding. The

respondent in that case was entitled under state law to compel the attendance of witnesses

by subpoena. Short notice was given of the hearing and the respondent moved for a

continuance in order to secure his witnesses through use of the subpoena power. The

continuance was denied and the reviewing court found this to be an abuse of discretion:

While the PSC frames the argument as whether the ALJ was absolutely required to continue the hearing to enforce Lee's subpoenas, the question is whether the ALJ abused its discretion in denying the request and thus violated Lee's due process rights.

Considering the length of time between Lee's request for a hearing and the hearing itself, the superior court did not err in concluding that the ALJ's ruling denying Lee the right to present evidence from her witnesses was an abuse of discretion and a violation of Lee's rights to due process.

<u>Id.</u> at 65–66.

45.     In this case, the Cobb County Board controlled all of the strings. The records

sought by Tokyo Valentino are County records. The custodian who possessed all of those

records was a County employee. It is not clear whether the failure to produce those records was intentional or a bureaucratic oversight. The end result, however, was the same: the County did not produce records it alone possessed which were crucial to Tokyo Valentino's defense. At the very least, there is an appearance of impropriety when the official who initially suspended the license and was the County's chief witness was also the official who withheld the documents Tokyo Valentino needed to defend itself.

46.     While Tokyo Valentino was prejudiced by having to defend itself with both hands tied behind its back, the County would have suffered no harm from a 30-day continuance. Tokyo Valentino had already paid its tax for 2020 and the OTC tax for 2021 was not yet due. The County would not have had to call a special meeting in order to accommodate a continuance; it could merely have scheduled the hearing at its next regular meeting the following month. In short, there was obvious prejudice to the Petitioner, no harm to the County and absolutely no reason not to grant the requested continuance.

47.     When all this was pointed out to the County and a request was made to delay the proceedings long enough to obtain the required records, the County refused outright. In its rush to judgment, the Board abused its discretion and trampled on Tokyo Valentino's due process rights.

      **(2)    The Lack of Established Procedures set forth in the Code of Ordinances Deprived Petition of its Due Process Rights.**

48.     Petitioner has shown that Cobb County has not adopted any procedures to guide its decision to suspend or revoke an occupation tax certificate. It may be that the County intended to do so, but it is clear that, in the event, no such procedures exist. The

Business Licensing Code does not include any procedures or standards of proof, but purports to incorporate them by reference from another section of the Code. In particular, the Business Licensing Code says that its procedures will be as "specified in section 6-147(b)." *See*, §78-45(a), Cobb County Code. Unfortunately, §6-147(b) includes no procedures at all, but reads as follows:

> (b)    The police department shall notify the business license division manager of any violation of section 6-147(a).

49.    In the absence of any established procedures, the County did conduct a hearing of sorts, took testimony and heard argument. The problem was that the Petitioner and its counsel had no notice of what procedures would apply, what the standard of proof would be, who bore the burden of moving forward with the evidence and what evidence would be allowed. This was all made up on the fly on an arbitrary and ad hoc basis.

50.    A first step in determining the adequacy of due process protections is to determine what process is provided by law. *See*, Bentley v. Chastain, 242 Ga. 348, 352, 249 S.E.2d 38, 41 (1978) ("[T]he focus of the courts in reviewing administrative decisions should be to evaluate the extent of discretion delegated to that agency and to see that the agency acts within the limits of its discretion in order to protect individuals against the unnecessary and uncontrolled use of that power. The focus is controlling discretion through administratively established standards and safeguards."). Here, there was no telling what law would apply *because there was no law*. The ability to adopt arbitrary procedures renders the process suspect from the beginning. Georgia law provides that a reviewing

court must examine whether an administrative body acted in accordance with applicable law. That law is necessary to control and confine the discretion of the administrative body.

51.     The Board abused its discretion when it refused Tokyo Valentino's request for a continuance. It also applied the wrong law as will be alleged below. In the absence of any established procedures in the Business Licensing Code, Petitioner could not help but suffer prejudice. Georgia law does not tolerate arbitrary licensing decisions:

> Folsom also argues, however that the Ordinance violates dues process because it fails to set forth any ascertainable standards for determining whether a violation of state or federal law justifying license revocation has in fact occurred. The Ordinance allows the City Council to revoke or suspend a license if they determine, "to their own satisfaction," that any violation of law has occurred. We agree with Folsom that the discretionary nature of the City Council's revocation authority, combined with the complete absence of any ascertainable limits as to the types of violations that would justify revocation, violates the license holder's rights to due process.
>
> Under Georgia law, "the suspension or revocation of [alcohol] permits or licenses shall be in accordance with the following guidelines of due process ... (1) [t]he governing authority shall set forth ascertainable standards in the local license ordinance upon which all decisions pertaining to these permits or licenses shall be based." Ordinances pertaining to the issuance or revocation of liquor licenses in Georgia must provide "sufficient objective standards to control the discretion of the governing authority and adequate notice to applicants [or licensees] of the criteria for issuance [or revocation] of a license."
> …
> In this case, to the contrary, there are no such limits on the council's discretionary revocation authority, and no "ascertainable standards" to guide or limit the grounds for the Council's decision. The Ordinance authorizes the Council to revoke an alcohol license if it determines in its own discretion that any legal violation has occurred. That type of absolute discretion in both the determination of the occurrence of the violation as well the relevance of the violation does not comport with basic principles of due process or the statutory requirements. "Absolute and uncontrolled discretion by governing authorities to issue [or revoke] licenses invites abuse, and exercise of discretion by states and local governments must be

tempered with ascertainable standards…" Accordingly, that part of the Jasper Ordinance authorizing license revocation for any legal violation that the Council determines to its own satisfaction to have occurred violates basic principles of due process and cannot stand.

Folsom v. City of Jasper, 279 Ga. 260, 263–65 (2005); *See, also*, Davidson Mineral Properties, Inc. v. Monroe County, 257 Ga. 215, 216(1) (1987) (Resolutions giving the Board of Commissioners absolute discretion to grant or deny construction permits with no standards whatsoever to control that discretion and without providing any notice to applicants of the criteria for the issuance of permits were too vague to be enforced).

### B.   THE BOARD APPLIED THE WRONG LAW WHEN IT USED A REVENUE-GENERATING ORDINANCE FOR REGULATORY PURPOSES.

52.    This Court will review *de novo* the decision of a lower administrative tribunal to ensure that it applied the correct law. *See, generally*, Guhl v. Pinkard, 243 Ga. 129, 130 (1979) ("[T]he constitutionality of legislative enactments, including zoning ordinances, are questions of law for the courts."). In this case, the Board took a limited licensing law intended for a single purpose – to raise revenues – and applied it in an inappropriate fashion to shutter Petitioner's business with the intent to effect a forfeiture of Tokyo Valentino's vested rights. Tokyo Valentino showed that it is properly classified as a general or mixed retail store as it sells a variety of consumer goods on a retail basis. It most definitely was not an "adult business" or an "adult bookstore" as it met none of the criteria for regulating those businesses under the law in effect when it applied for its OTC. Finding itself stymied in its ability to regulate a business it clearly did not favor, the Board resorted to illicit means to close the store.

53.     The occupation license tax implemented by the Business Licensing Code is

intended to generate revenue for the County and is not intended as a regulatory measure:

> The occupation tax levied in this section is for revenue purposes only and
> is not for regulatory purposes.

§78-31(a), Cobb County Code.

54.     There was no argument at the revocation hearing that Tokyo Valentino

failed to pay its occupation tax. Neither was there any argument or evidence that Tokyo

Valentino made some misrepresentation that led the County to assess an incorrect tax. To

the contrary, the County was fine with the $420.00 assessed against and paid by Tokyo

Valentino. Neither did the County argue or prove that anything Tokyo Valentino did or

said made its collection of the tax more difficult. For instance, there was no allegation that

Tokyo Valentino had provided an incorrect address so that County personnel couldn't

communicate with representatives of the company about matters of consequence.

55.     A review of the minutes of the revocation hearing show that there was no

discussion or testimony related to taxation at all. Instead, the County's witnesses and

evidence concerned the product mix at Tokyo Valentino's store – and not just any product

mix. The County's attorney and witnesses were focused on dildos and sex toys. The

County's attorney and witnesses did not suggest that dildos and sex toys are supposed to

be taxed differently than pipes and panties. Rather, their interest was exclusively of the

prurient variety. However, that is not a legal basis for assessing the occupation licensing

tax nor does it provide a legal basis to revoke Tokyo Valentino's properly and lawfully-

issued OTC.

56.    The Board was not at liberty to ignore the standards in the code or to adopt

new standards not reduced to writing:[6]

> [M]unicipal authorities… 'are not vested with a discretion to grant or refuse licenses or to revoke such licenses at… will."
>
> …
>
> The fact that one may violate any law of the state will not of itself confer upon a municipality authority to refuse or revoke a license to carry on a business which in itself is perfectly lawful, even though the licensee may be or become guilty of creating a nuisance at his place of business; since a nuisance may be abated by a proceeding brought for that purpose." ….
>
> …
>
> The ordinance in the present case is discriminatory, for it allows the arbitrary granting of the permit to some and the refusal to others. It is the denial of a property right to a citizen without just and adequate compensation being paid therefor. The granting of hearing before a commission who have arbitrary power to grant or refuse a permit is of itself a denial of the due process clause of the Constitution of this state. The court erred in overruling the petition for certiorari.

Jones v. City of Atlanta, 51 Ga. App. 218 (1935). Less venerable cases make the same

point. *See, e.g.*, Fleck & Associates, Inc. v. City of Atlanta, 260 Ga. 105 (1990) (Plaintiff

was entitled to an injunction staying enforcement of city's revocation of its business

---

[6] A course of dealing can sometimes illuminate licensing practices and procedures where the implementing legislation is ambiguous. *See, generally*, Suttles v. Nw. Mut. Life Ins. Co., 193 Ga. 495, 516, 19 S.E.2d 396, 408 (1942) (Administrative interpretation and practice, continued for a long period, could be used as an aid in construing statute only when statute is ambiguous and susceptible of different interpretations). To the extent past practices are relevant to the Board's interpretation of the Business Licensing Code, it is apparent that the Respondent has never previously used the Code as means of closing a business for purposes other than non-payment of the tax and that no attention has ever previously been paid to the product mix of any store in this jurisdiction. To the contrary, the record shows that other businesses described their general retail stores with a similar level of detail as Tokyo Valentino and with similar identification of their responsible managers / corporate representatives. *See*, Exhibit P, Motion to Dismiss Grounds under 78-45(c)(2) and Grounds under Section 78-45(c)(4) as they Violate Respondent's Equal Protection. The County has never previously attempted to revoke an OTC for alleged misrepresentations on a license application.

license, as city code provision permitting license revocation under "any proper criterion or standard" violated due process); <u>Arras v. Herrin</u>, 255 Ga. 11, 12 (1985) ("The ordinance in question contained objective standards regarding the location of the business where the license is to be exercised, and it is without dispute that Arras met these objective standards. Instead of relying on these standards, the Board based its denial on the vague language of section 11–102(7) which confers an 'absolute discretion' on the Board to make a 'final' determination as to whether the location is 'proper' and in the 'best welfare' and 'best interests' of Camden County. These words contain no standard to control the discretion of the Board and thereby deny due process.").

57.     Here, the substantive law created an occupation tax system for the sole purpose of generating revenue for the County. That same law forbade the use of the OTC system for regulatory purposes. When the Board could find no regulatory law which Tokyo Valentino even arguably violated, it manufactured a violation of a tax law unconnected to any regulatory scheme – a use specifically forbidden by the County's own code.

### E.   THE DECISION OF THE CODE ENFORCEMENT BOARD WAS NOT SUPPORTED BY ANY EVIDENCE.

58.     Judicial review of factual conclusions drawn by administrative agencies is relatively narrow:

> Judicial review of an administrative decision requires the court to determine whether the findings of fact are supported by "any evidence" and to examine the soundness of the conclusions of law that are based upon the findings of fact. While the judiciary accepts the findings of fact if there is any evidence to support the findings…

Eagle W., LLC v. Georgia Dep't of Transp., 312 Ga. App. 882, 884–85 (2011). This is not

a toothless standard because findings of fact necessarily impact the ultimate conclusions of

law. Courts are instructed to examine the reasonableness of that fit:

> "Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." (citation omitted).

Cent. Georgia Elec. Membership Corp. v. Pub. Serv. Comm'n, 351 Ga. App. 69, 71 (2019).

59.     Under Georgia law, a reviewing Court is obligated to reverse administrative

decisions where the findings of fact are applied in a legally erroneous manner:

> While the judiciary accepts the findings of fact if there is any evidence to support the findings, the court may reverse or modify the [agency] decision if substantial rights of the appellant have been prejudiced because the administrative ... decision [ ] ... [is]: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law.

Pruitt Corp. v. Georgia Dep't of Cmty. Health, 284 Ga. 158, 161 (2008).

60.     As noted above, the Board purportedly revoked Tokyo Valentino's OTC for

three reasons: (1) misrepresentations on its license application; (2) holding an invalid

license which did not correctly match the actual products sold in the store; and (3)

misrepresentations made to the public regarding the business.[7]

---

[7] The second basis for revoking the license is really just a restatement of the other two findings. In particular, there is no question that Tokyo Valentino operates a retail store, that it applied for a license, that it paid for a license and that it was issued a license. Thus, it is incorrect to state that Tokyo Valentino did not hold a license at all. It would also be incorrect to state that the license was invalid; it did not become invalid until the Board voted to revoke it.  The most the County can say is that it thought it was issuing a license for a clothing store and general retail store while the licensee actually operated a clothing, general retail, adult Media, and sexual device store. That finding simply overlaps the first

61.     One can quibble with the Board's findings given that Petitioner's actual application shows that its representations were substantially true in all respects. However, the law instructs courts not to reweigh those disputes through certiorari review. Nevertheless, it is appropriate to examine the fit between the supposed findings and the legal conclusions which are actually material to the Business Licensing Ordinance. There is a serious mismatch between the two.

62.     The County proved three things for which there is arguably some record evidence: (1) Tokyo Valentino sells adult Media which was not specifically listed as a principal product on the license application; (2) Tokyo Valentino sells sexually devices which are not specifically listed as a principal product on the license application; and (3) Tokyo Valentino's principal officer claimed not to know exactly what would be sold there when he must have known that the product line would include adult Media and sex toys. The natural question for the Court to ask is "so what"? Those findings of fact, while apparently significant to the Board, are immaterial when it comes to the Code the Board was administering.

63.     The County asserted that Tokyo Valentino lied to newspaper reporters concerning the nature of its business. Importantly, however, there was no link between those alleged misrepresentations and the decision to license and tax Tokyo Valentino as a general retail store. The County did not even hear testimony from the newspaper reporters who might have heard statements attributed to Tokyo Valentino's principal, Michael

_____

and second conclusions reached by the Board and adds nothing new.

Morrison. Instead, the County relied on evidence of new accounts which someone read

which reported what Mr. Morrison supposedly said. In addition to being immaterial, that

"evidence" was not admissible in the revocation proceeding because it was hearsay within

hearsay:

> "In this state even in the absence of objection, hearsay is without probative value to establish any fact." (Citations and punctuation omitted.) Williams v. Piggly Wiggly Southern, 209 Ga.App. 490, 433 S.E.2d 676 (1993). We have held this to be the rule even in administrative hearings. Finch v. Caldwell, 155 Ga.App. 813, 815, 273 S.E.2d 216 (1980).

McGahee v. Yamaha Motor Mfg. Corp. of Am., 214 Ga. App. 473, 473 (1994); *See, also*,

Neal v. Augusta-Richmond Cty. Pers. Bd., 304 Ga. App. 115, 118 (2010) (Citing McGahee

for the same proposition).

64.     A separate, constitutional ground exists for declaring that statements

allegedly made to newspapers cannot be used as a basis to deny, suspend or revoke a

business license. There is no allegation here that Tokyo Valentino's statements to the press

had anything to do with the County's licensing program or that the County relied on those

statements in determining the correct tax to assess against Tokyo Valentino. Rather, the

County simply contended that the statements made to the public via media outlets about

the nature of the business were misleading.

65.     The First Amendment protects speech – evenly brazenly untrue speech –

when it is not directly associated with illegal activities. *See*, United States v. Alvarez, 567

U.S. 709, 132 S. Ct. 2537 (2012) (False claims that defendant won the Medal of Honor

could not be criminalized); Snyder v. Phelps, 562 U.S. 443, 131 S. Ct. 1207, (2011) (Signs

and chanting such as "God Hates Fags" to protest a military funeral could not be the basis

for a state law tort claim for emotional distress). The County cannot use its licensing scheme as a backdoor way to punish or censor speech it cannot ban directly.

66.    The record contains no evidence that any misrepresentation by act or omission had any effect on the tax assessed against Tokyo Valentino – the only reason the Code exists according to the Code itself. *See,* §78-31(a), Cobb County Code. Neither is there any evidence that the tax actually assessed - $420.00 – was in error. Neither is there any evidence that the County had any difficulty collecting that tax from Tokyo Valentino because of some lie or false statement or misidentification of managers. In short, the record facts show only that Tokyo Valentino was assessed and paid the correct tax for the business as represented and as actually conducted. To put a fine edge on this point: the record is devoid of all evidence that Tokyo Valentino did or failed to do anything required by the actual language of the Code.

## VII.    <u>CONCLUSION</u>

67.    The Board used ad hoc procedures and erroneous legal standards to deprive Tokyo Valentino of its business license in violation of its procedural and substantive rights. The Business Licensing Code is intended to impose a tax for purposes of generating revenue; it is not a regulatory tool and the Code specifically states that it may not be used for that purpose. *See,* §78-31(a), Cobb County Code. The County neither claimed nor proved that Petitioner did or said anything which resulted in the assessment of an incorrect tax or that the collection of that tax was hampered by any misrepresentation to County officials or to the public. Tokyo Valentino applied for and paid the tax appropriate for a

general retail store. It was and remains a general retail store. It simply sells a line of products which the County finds to be offensive. In fact, the County objects so strongly that it was willing to misuse its tax laws in an effort to deprive Tokyo Valentino of the right to conduct a lawful business. This Court should reject that illegal action by quashing the decision of the Board of County Commissioners to revoke Tokyo Valentino's occupation tax certificate.

*Respectfully submitted,*

WIGGINS LAW GROUP, LLC

 /s/  Cary S. Wiggins
CARY S. WIGGINS, Esquire
Ga. Bar No. 757657
260 Peachtree St., NW, Suite 401
Atlanta, Georgia 30303
(404) 659-2880  (Fax) 659-3274
cary@wigginslawgroup.com
*Attorney for Plaintiff / Petitioner*